Glinda Gay Robbins sued Wal-Mart Stores, Inc.; Kim Taylor, a pharmacist employed in a Wal-Mart pharmacy; and others, alleging negligence, wantonness, and breach of contract relating to the misfilling of a prescription for Robbins's thyroid medication.
Before trial, Robbins dismissed the breach of contract claim and dismissed all of the defendants except Wal-Mart and Taylor. A jury returned a verdict in favor of Robbins for $10,000 in compensatory damages and $190,000 in punitive damages. The trial court entered a judgment on that verdict. Wal-Mart and Taylor appeal. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
Wal-Mart and Taylor contend: (1) that the trial court erred when, five days into the trial of the case, it allowed Robbins to amend her complaint to add additional claims of wantonness; (2) that the court erred in failing to grant a mistrial when Robbins "blurted out," over strenuous objections, that her doctor had said all of her problems had been caused by the misfilled prescription; (3) that an award of punitive damages 19 times the amount of the compensatory damages is unconstitutional; and (4) that the application of § 8-8-10, Ala. Code 1975, and imposition of post-judgment interest on a punitive damages award is unconstitutional.
Robbins was first diagnosed with hypothyroidism in January 1991, by Dr. John Salvaggio. Dr. Salvaggio prescribed 1.5-grain "Synthroid," a thyroid medication. He testified that Robbins's condition had improved when he saw her for a six-month check-up and that her condition had seemed to be clinically controlled. Dr. Salvaggio next saw Robbins on January 13, 1993. On that day, he gave her a prescription for "Thyroid," a new medication, 1.0-grain, 100 tablets, to be taken one per day. The prescription allowed four refills, making it over a year's worth of medication. Robbins took the prescription to a Wal-Mart pharmacy to be filled. Taylor was the pharmacist who filled the prescription. Taylor testified that she interpreted the "1" as a "3" and filled the prescription with 3.0-grain Thyroid. Dr. Salvaggio testified in his deposition that he had written a "1" by drawing a straight line with a base at the end of it and an angled line at the top, but that half of the base was "missing." Taylor testified as to the appropriate procedures to be followed in situations where the pharmacist is unclear about a written prescription. The procedure is to call the prescribing physician and/or to consult with another pharmacist, if one is available. Taylor testified that she did not consult with the prescribing physician because, she said, she "honestly didn't have a question at that time." Taylor stated that the prescription information was entered into the computer, but that she had the capability of obtaining a copy of the original prescription for five years after it was originally filled. She further stated that there is a triple checking procedure that was in effect at the time of the incident in question to ensure that "prescription *Page 286 
incidents"[1] were kept to a minimum. These procedures simply involved checking: (1) the medication on the pharmacy shelf against the written prescription; (2) the actual bottle against the written prescription; and (3) reshelving the medication and checking it against the written prescription one final time. Taylor testified that Robbins had the prescription refilled on four occasions — April 22, 1993, August 7, 1993, November 18, 1993, and March 2, 1994. Taylor testified that if she had a question about the prescription when any of the refills were dispensed, she had the capacity of obtaining a copy of the original prescription as opposed to simply taking the refill information off the computer screen. She stated, however, that she did not feel that she had any reason to question her interpretation of the prescription.
Extensive testimony revealed that Robbins had had a history of depression. She was treated for depression and anxiety in 1984, 1986 (when she took one month's leave of absence from work for "depression with neurosis"), and 1989, and was hospitalized in 1992 for depression, anxiety, and possible psychosis. It should be noted that the misfilled prescriptions complained of were taken by Robbins from January 1993 through April 1994. Not all of Robbins's health problems can be related to the overcompensation of thyroid; however, testimony revealed that Robbins's symptoms were much worse in 1993 and 1994 than during her previous bouts with depression. During this time, Robbins experienced tremendous mood changes, was increasingly depressed, and eventually became suicidal. Her family and friends noted a drastic change in her, even in her appearance. Her behavior was extreme in such ways as making telephone calls in the middle of the night, unexplained crying, rapid speech with disjointed thought patterns, suicidal ideations, which manifested themselves in such things as keeping a loaded gun at her bedside, walking down the road in the middle of the night, and an inability to control her finances, which she had previously done well even on a limited income. In 1995, she had a diagnosis of adjustment disorder with depressed and anxious moods, and major depression with psychotic features. At that time, Robbins was said to be suicidal and possibly homicidal. Dr. Salvaggio testified that hyperthyroidism could cause depression.
During direct examination, Robbins attempted to testify that Dr. Salvaggio had said that the triple dosage of thyroid medication was the reason she was having "necessary thoughts." Counsel for Wal-Mart objected to this testimony; the trial court sustained the objection and subsequently instructed the jury to disregard Robbins's testimony as to what Dr. Salvaggio had said caused her problems. Dr. Thomas Luther Smith, Jr., a psychiatrist who had treated Robbins, testified that some of her symptoms could have been thyroid-related, because, he said, taking too much thyroid hormone can cause a "bipolar or manic-like presentation" and will affect a clinical presentation. He further testified that a hyperthyroid patient can become paranoid and psychotic based on the thyroid condition alone and that hyperthyroidism can show itself in schizophrenia or other "like psychosis." Dr. Smith also testified that Robbins's behavior was consistent with that of someone who was overcompensated and that if one has a chemical imbalance that causes depression, that thyroid dysfunction/imbalance will "speed up" the symptoms of depression. Dr. Williamson, a psychologist who had treated Robbins, testified that some people present for treatment with psychiatric symptoms that may be actually thyroid dysfunction.
The complaint in this case was filed in September 1994. After extensive pre-trial discovery, the case was tried before a jury, beginning on May 24, 1996. After several days of testimony, Robbins's attorneys moved to amend the complaint, pursuant to Rule 15(b), Ala. R. Civ. P., to add negligence and/or wantonness counts for each of the four occasions on which the prescription was refilled. The record reflects strenuous objection *Page 287 
by Wal-Mart's counsel, who argued that the addition of multiple counts of wantonness completely changed "the needs that we have in terms of the defense of the case." Further, defense counsel argued that the decision not to hire an expert witness had been "based upon the way [the plaintiff's original wantonness claim] was cast and framed." A motion in limine, filed seven and one-half months before trial, had previously been ruled upon, and in its ruling the court had placed restrictions on the introduction of incident reports related to other misfills. When Robbins's counsel moved to amend, defense counsel reiterated its previous arguments that it would be "extremely prejudiced" by not being allowed to present expert testimony on the standard of care for the refill of a prescription, as opposed to the original filling of a prescription. The court allowed the amendment and the case proceeded to the jury, which returned a verdict in favor of Robbins for $10,000 in compensatory damages and $190,000 in punitive damages.[2]
Wal-Mart contends that the court erred in allowing Robbins to amend her complaint well into the trial of the case. Rule 15(b), Ala. R. Civ. P., allows for the amendment of the original pleadings to conform to the evidence. The rule specifically states, in part:
 "If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."
The supreme court has held that amendments should be liberally granted under this rule, but not in situations where the opposing party would be unduly prejudiced. Hayes v. Payne,523 So.2d 333, 334 (Ala. 1987). In the instant case, defense counsel not only strenuously objected to the amendments, but argued that the defense would be "extremely prejudiced" by the granting of the motion and that four additional counts of wantonness would be "impossible to defend" on such short notice. Counsel reminded the court that the matter had been previously ruled on and that he had relied on that ruling as he proceeded with the defense of the case. In addition to arguing his need for expert testimony on the subject of prescription refills, defense counsel argued that he would need more discovery with Ms. Robbins's relatives regarding the circumstances of her refills and also would need to depose her son.
In granting the amendment, the court told counsel for Wal-Mart that if counsel requested a continuance the case would be continued. After deliberating with his clients, counsel for Wal-Mart informed the court that Wal-Mart was prepared to proceed, but that it was not waiving its objection to the amendment.
Wal-Mart's argument is premised on the idea that it was prejudiced by the amendment because, it says, it needed additional discovery and the additional counts would be impossible to defend on such short notice. The court allowed Wal-Mart the opportunity to postpone the trial; Wal-Mart refused that opportunity. "[A] party may not complain of error into which he has led the court." Ex parte King, 643 So.2d 1364
(Ala. 1993). If there was error, we find that it was invited by Wal-Mart.
Wal-Mart next contends that the court erred in failing to grant a mistrial when Robbins "blurted out" hearsay evidence concerning her conversations with her doctor. It is well established that the trial court has wide discretion in ruling on motions for a mistrial and matters affecting the rights of either party to a fair trial and that such rulings will not be disturbed unless it is "absolutely clear" that the court's discretion has been abused. Wright v. Terry, *Page 288 646 So.2d 11 (Ala. 1994). The court sustained Wal-Mart's objection, instructed the jury as to the pertinent hearsay rule, and instructed the jury to disregard Robbins's statements. We conclude that the court took all necessary measures to ensure a trial fair to both parties.
Wal-Mart next contends that the jury's award of punitive damages was excessive. Following a hearing on the question of excessiveness of the punitive damages, the court determined that "[t]here is not evidence before the Court that the amount of punitive damages assessed against [Wal-Mart] by the jury — $190,000.00 — is excessive." The record contains no transcript of the hearing.
"Because the trial court did not put in the record its reasons for refusing to interfere with the jury's verdict on the grounds of excessiveness, we are unable to review its ruling on that issue." Life Ins. Co. of Georgia v. Parker,706 So.2d 1108 (Ala. 1997). We, therefore, remand the case for the trial court to make written findings on the issue concerning the excessiveness of the punitive damages award. Id.
Finally, Wal-Mart contends that § 8-8-10, Ala. Code 1975, and the imposition of post-judgment interest on punitive damages is unconstitutional. The record, however, does not indicate that the attorney general's was properly notified of the constitutional challenge. Therefore, we decline to address this issue. Ex parte St. Vincent's Hosp., 652 So.2d 225 (Ala. 1994).
The case is remanded for the court to make written findings on the question whether the punitive damages award was excessive. The judgment is otherwise affirmed.
AFFIRMED IN PART AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and MONROE and CRAWLEY, JJ., concur.
THOMPSON, J., concurs in the result.
[1] Even though this term is not specifically explained in the record, a careful reading of the record indicates that this is the term used to describe incidents involving any type of problem with a filled prescription.
[2] It should be noted that the jury originally attempted to return a verdict in favor of Robbins with $0 compensatory damages and $200,000 in punitive damages. The trial judge reinstructed the jury and the existing verdict was returned within minutes.