[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 321 
Brenda Cackowski and Michael Cackowski, the plaintiffs in a negligence/wantonness action, appeal from a judgment based on a jury verdict returned in favor of the defendant Wal-Mart Stores, Inc.
On October 11, 1995, Brenda Cackowski enrolled in a physician-supervised weight-loss program and was prescribed a number of medications: Verelan, Profast, and Pondimin. Verelan is a medication commonly prescribed for high blood pressure. Profast and Pondimin are diet medications.[1] The next day, Mrs. Cackowski went to the Wal-Mart pharmacy in Arab and had the prescriptions filled. The clerk on duty at the pharmacy counter asked Mrs. Cackowski if she wanted to have her prescriptions filled with generic medication, rather than the brand-name medication. Mrs. Cackowski stated that she did. Gavin Gilleland, the pharmacist on duty that day, correctly filled the Profast prescription. However, Gilleland misread the word "Pondimin," thinking the prescription was for Prednisone, a steroid. Instead of giving Mrs. Cackowski Pondimin or its generic equivalent, he gave her Deltasone, the generic equivalent of Prednisone. Because it was the cold and flu season, Gilleland did not think it unusual that a physician would prescribe a diet drug and a steroid (which causes weight gain) for the same person and to be taken at the same time.
Although Mrs. Cackowski left the prescription with the pharmacist, her physician had also given her a list of the drugs he was prescribing for her. This list stated that he was prescribing Profast, Pondimin, and Verelan for her. Mrs. Cackowski knew that Gilleland gave her Deltasone rather than Pondimin, but she did not ask Gilleland the difference. Mrs. Cackowski took the Deltasone for 30 days, in accordance with the directions on the prescription. When Mrs. Cackowski finished the prescription, she went back to Wal-Mart to have it refilled. When the prescription was refilled, it was correctly filled and she received Pondimin. However, several days after she began taking the Pondimin, Mrs. Cackowski began to experience blurred vision and lethargy. Her husband became concerned and contacted her physician. Further investigation revealed Gilleland's error.
On September 16, 1996, the Cackowskis sued Wal-Mart and its pharmacist Gavin Gilleland, alleging negligence and wantonness in the incorrect filling of Mrs. Cackowski's prescription for diet medication. *Page 322 
Mr. Cackowski also claimed a loss of consortium.
At trial, Mrs. Cackowski stated that she suffered pain and stiffness in her knees, muscle pain, and acne as a result of taking the steroid Deltasone for 30 days. Moreover, when Mrs. Cackowski stopped taking the steroid and began taking the correct medication, her system went into withdrawal, causing the blurred vision and lethargy. After the mistake in prescriptions was discovered, Mrs. Cackowski had to be put back on the steroid and gradually weaned off the drug. As a result of taking the steroid, Mrs. Cackowski claimed, she had difficulty in concentrating and had memory loss, hair loss, night sweats, joint pain, and swollen glands. Mrs. Cackowski also stated that she became severely depressed and suicidal. Two physicians diagnosed Mrs. Cackowski as suffering from depression and Epstein-Barr virus. One mental-health professional determined that Mrs. Cackowski's depression and anxiety stemmed from steroid use.
Wal-Mart presented testimony from two physicians who disputed the long-term effects of the steroids taken by Mrs. Cackowski. They testified that the problems experienced by Mrs. Cackowski were related to the long-term use of the prescribed diet medications, use of the antidepressant "Serzone," and the "Adenosine" injections she received in conjunction with her weight-loss program. These physicians also disputed whether the active Epstein-Barr virus was present in Mrs. Cackowski's system. According to them, Mrs. Cackowski's test results indicated the presence of the Epstein-Barr antibody in her system, and its presence would indicate that she may have been exposed to the virus at some time in the past. In any event, they said, the presence of the Epstein-Barr virus or antibody in Mrs. Cackowski's system was not related to her use of the steroid Deltasone.
The trial court ruled that a pharmacist fell within the definition of "other health care provider" set out in § 6-5-481(8), Ala. Code 1975. Therefore, the court determined, the Cackowskis' claims against Gilleland and Wal-Mart were governed by the Alabama Medical Liability Act ("AMLA"), §§ 6-5-480 through6-5-488, and §§ 6-5-540 through 6-5-552, Ala. Code 1975, and that those statutes required them to prove their case by "substantial evidence." At the close of the Cackowskis' case, the trial court granted Wal-Mart's motion for a directed verdict as to the Cackowskis' wantonness claim, but denied its motion for a directed verdict on the negligence and loss-of-consortium claims. At the close of all the evidence, the Cackowskis dismissed their claims against Gilleland, leaving only their claims against Wal-Mart. The case was submitted to the jury, which returned a verdict in favor of Wal-Mart. The court entered a judgment on that verdict, and the Cackowskis appeal.
 I.
The Cackowskis first argue that the trial court erred by requiring them to prove their case by "substantial evidence," as mandated by the AMLA, while Wal-Mart, they say, was required to prove its defense of contributory negligence only to the jury's "reasonable satisfaction." In order to answer this argument, we must determine whether a pharmacist is a "health care provider," as that term is defined in § 6-5-542(1), Ala. Code 1975. That statute defines "health care provider" as "[a] medical practitioner, dental practitioner, medical institution, physician, dentist, hospital, or other health care provider as those terms are defined in § 6-5-481." Section 6-5-481(8) defines "other health care providers" as "[a]ny professional corporation or any person employed by physicians, dentists, or hospitals who are directly involved in the delivery of health care services."
The question whether a pharmacist is a health care provider for purposes of the AMLA is a question of first impression. This is not, however, the first time this *Page 323 
Court has been called upon to determine whether an individual fell within the definition of "other health care providers" for purposes of the AMLA. Thus, we must look to our earlier decisions for guidance.
This Court first addressed this issue in TuscaloosaOrthopedic Appliance Co. v. Wyatt, 460 So.2d 156 (Ala. 1984). Edward Wyatt, a paraplegic, fell and fractured his femur. He sought treatment from Dr. E. C. Brock, an orthopedic surgeon. Dr. Brock determined that Wyatt's leg could best be treated by the application of a "fracture brace." While Wyatt was hospitalized, Dr. Brock brought James Mason, an orthotist with Tuscaloosa Orthopedic Appliance Company, to see him. Dr. Brock introduced Mason to Wyatt, stating that Mason was "the man who would put the brace on his leg." 460 So.2d at 158. Several days later, Wyatt complained to Dr. Brock about the brace. Although Wyatt's condition had caused him to develop decubitus ulcers, he contended that the leg brace had caused additional ulcers. The brace was removed and replaced with splints. However, Wyatt developed additional ulcers. Ultimately, an ulcer that developed just above the fracture site became infected; as a result, Wyatt's leg was amputated.
Wyatt sued Tuscaloosa Orthopedic Appliance Company and James Mason, alleging negligence and wantonness in connection with the fabrication and application of the leg brace. The jury returned a verdict in favor of Wyatt. The court entered a judgment on that verdict. Tuscaloosa Orthopedic Appliance appealed, contending that Wyatt had failed to offer any expert testimony indicating that Mason's performance had fallen below the acceptable standard for orthotists.
This Court reversed the judgment, holding: "Although orthotists are not specifically mentioned in the Alabama Medical Liability Act, § 6-5-480, et seq., Ala. Code 1975, they are health care providers who provide services as prescribed by physicians for their patients." 460 So.2d at 161.
Likewise, in Wilson v. American Red Cross, 600 So.2d 216
(Ala. 1992), this Court was called upon to determine whether the American Red Cross fell within the definition of a health care provider. In that case, Gerald Wilson sued the American Red Cross, alleging negligence and wantonness, after he had contracted hepatitis B from contaminated blood that he had received while hospitalized at University Hospital ("UAB Hospital") in Birmingham. The trial court entered a summary judgment in favor of the Red Cross, and Wilson appealed.
This Court affirmed the summary judgment, concluding that the Red Cross came within the phrase "other health care provider," as defined out in §§ 6-5-542 and 6-5-481:
 "The record in the instant case reveals that when Wilson received the allegedly defective blood, the Red Cross was under a contract with the University of Alabama Hospital to supply blood to the hospital. The record further reveals that the activities of the Red Cross are highly technical and require supervision and participation by a physician and other trained technical personnel. Based on this evidence, we conclude that the Red Cross is employed by the hospital and that the Red Cross is directly involved in the delivery of health care services. We agree with the South Carolina Supreme Court that the collection and processing of blood for transfusion is a medical service and that the Red Cross, as a blood collector and processor, should be treated as a professional. Doe v. American Red Cross Blood Services, [297 S.C. 430, 377 S.E.2d 323, 326 (1989)]. We hold, therefore, that the Red Cross is an `other health care provider' under § 6-5-542 and that the standard of care applicable to the Red Cross is set forth in Ala. Code 1975, § 6-5-542(2)."
600 So.2d at 218-19.
This Court has also been called upon to determine whether a registered nurse fell *Page 324 
within the definition of "other health care provider" as set out in § 6-5-542. In Ex parte Main, 658 So.2d 384
(Ala. 1995), Arnold Fehringer suffered an on-the-job injury to his back. Fehringer's employer's workers' compensation carriers were United States Fidelity Guaranty Company and Fidelity 
Guaranty Insurance Underwriters, Inc. ("USFG"). USFG assigned registered nurse Myra McCowan to supervise Fehringer's "rehabilitation." McCowan consulted with Dr. Gaylon Rogers, an orthopedic surgeon, who had treated Fehringer's back injury. Dr. Rogers recommended that Fehringer undergo physical rehabilitation as an outpatient at HealthSouth Rehabilitation Center in Birmingham, and McCowan agreed. During rehabilitation, Fehringer became despondent and began to speak to his mother, Wanda Main, of suicide. Main became concerned, and she told McCowan that she wanted her son to return home. McCowan told Main that she would take precautions to ensure Fehringer's safety. However, Fehringer subsequently committed suicide.
Main filed a wrongful-death action in the Winston Circuit Court against USFG, McCowan, and Bill Malphurs, a "senior adjuster" with USFG. Thereafter, USFG, McCowan, and Malphurs requested that the case be transferred to Jefferson County, contending that under the venue provisions of the Alabama Medical Liability Act, venue was proper only in Jefferson County. The trial court agreed. Main petitioned for a writ of mandamus, seeking to have the lawsuit transferred back to Winston County, on the grounds that her case was not a medical-malpractice action because, she argued, none of the defendants was a "health care provider" as defined in § 6-5-542, Ala. Code 1975.
We rejected Main's contention, basing our holding on our decision in Wilson v. American Red Cross:
 "Wilson's rationale applies with equal force in this case. Main concedes that McCowan was a registered nurse and that McCowan was treating Fehringer pursuant to contracts with both Dr. Rogers and HealthSouth. The facts here presented stop short of affirmatively demonstrating that McCowan was `employed' by Dr. Rogers or HealthSouth in the strictest sense of that term. However, this case is like Wilson in that McCowan's contractual relationships with HealthSouth and Dr. Rogers — persons whose offices are expressly listed in § 6-5-542 — are sufficiently analogous to employment relationships to qualify her as an `other health care provider.' In other words, McCowan's contracts with specifically listed persons supply the nexus with those persons necessary to invoke the operation of § 6-5-542.
 "We conclude, therefore, as did the trial judge, that Main's action is one `against a health care provider based on a breach of the standard of care.' Section 6-5-546."
658 So.2d at 387.
The Cackowskis argue that this case is factually distinguishable from Tuscaloosa Orthopedic Appliance Co. v. Wyatt,Wilson v. American Red Cross, and Ex parte Main because in this case, they say, the pharmacist was not "employed" by Dr. Gray. They contend that the term "employed" as used in § 6-5-481 should be strictly defined and limited to situations where there is some kind of employment or contractual relationship between the physician and the individual involved in the "delivery of health care services." However, the term "employ" means "to make use of," as well as "to use advantageously," "to devote or direct [one's time or energies, for example] toward a particular activity or person," "to use or engage the services of," or "to provide with a job that pays wages or a salary." Merriam Webster'sCollegiate Dictionary 379 (10th ed. 1997).
After careful consideration, we conclude that the pharmacist who filled Mrs. Cackowski's precription was included within the AMLA definition of "other *Page 325 
health care provider." To hold otherwise would be inconsistent with our prior decisions, particularly the decision in Tuscaloosa OrthopedicAppliance Co. v. Wyatt, where neither an employment relationship nor a contractual relationship existed between the physician and the orthotist. An individual goes to a physician for treatment of a physical complaint. Upon examining the patient, the physician may determine that a course of medication is necessary to treat the patient's condition. Accordingly, the physician writes out a prescription, which the patient takes to the pharmacy of his choice to be filled. Although it is the physician who prescribes the medication, it is only a pharmacist/pharmacy that can fill the prescription, by supplying the patient with the called-for medication. See § 34-23-1(17) and (18), Ala. Code 1975. Because a pharmacist and/or a pharmacy is inextricably linked to a physician's treatment of his patients, the dispensing of drugs is an integral part of the delivery of health care services to the public. For this reason, we conclude that a pharmacist is within the definition of "other health care provider" set out in § 6-5-481(8), Ala. Code 1975.[2]
Our decision today is consistent with previous decisions wherein we have referred to pharmacists as "health care providers" for other purposes. For example, in Bell v. Hart, 516 So.2d 562
(Ala. 1987), this Court addressed the issue whether a pharmacist was competent to testify as an expert witness concerning the correct dosage and effect of a prescription medication. The Court upheld the exclusion of the pharmacist's testimony, but based its decision on the fact that a pharmacist could not testify as to whether a physician had breached the standard of care in prescribing the medication. 516 So.2d at 570. In his dissenting opinion, Justice Jones specifically referred to the pharmacist as a "health care provider whose testimony" was being challenged.Id. More recently, in a workers' compensation case, this Court referred to a pharmacist as a "health care provider." ContinentalCas. Ins. Co. v. McDonald, 567 So.2d 1208, 1213 (Ala. 1990). Our decision in this present case is also consistent with our decisions in Sellers v. Picou, 474 So.2d 667 (Ala. 1985), andBaker v. McCormeck, 511 So.2d 170 (Ala. 1987). In those cases, this Court was initially faced with the question whether podiatrists (Sellers) and chiropractors (Baker) were included within the term "medical practitioner," as that term was defined in the Alabama Medical Liability Act. In each case, we determined that they were not. Because we determined that podiatrists and chiropractors were not "medical practitioners," we declined to allow them to be "back-doored" into the AMLA by including those professions within the definition of "other health care providers."[3] See Sellers v. Picou, *Page 326 474 So.2d at 668; Baker v. McCormeck, 511 So.2d at 171. Based on the foregoing, we conclude that the trial court correctly determined that claims against a pharmacist and/or a pharmacy must be proven by substantial evidence. See § 6-5-549, Ala. Code 1975.
 II.
The Cackowskis next contend that the trial court erred when it entered a directed verdict in favor of Wal-Mart on the wantonness claim.
"In considering the question whether the evidence of wantonness was sufficient to be submitted to the jury, this Court must accept as true the evidence most favorable to the plaintiff, and must indulge such reasonable inferences as the jury was free to draw from that evidence." IMAC Energy, Inc. v. Tittle,590 So.2d 163, 169 (Ala. 1991).
Our review of the trial court's ruling on a motion for a directed verdict is de novo. Driver v. National Sec. Fire Cas.Ins. Co., 658 So.2d 390, 392 (Ala. 1995).
 "The standard of review applicable to a directed verdict or to a denial of a motion for a directed verdict is whether the nonmoving party has presented substantial evidence in support of his position. If he has not, then a directed verdict is proper. Bailey v. Avera, 560 So.2d 1038, 1039
(Ala. 1990). A verdict is properly directed only where there is a complete absence of proof on a material issue or where there are no disputed questions of fact for the jury to determine. Woodruff v. Johnson, 560 So.2d 1040 (Ala. 1990). Moreover, whether to direct a verdict is not a matter within the discretion of the trial court; on review no presumption of correctness attaches to such a ruling. McCord v. McCord, 575 So.2d 1056, 1057 (Ala. 1991); Barksdale v. St. Clair County Comm'n, 540 So.2d 1389 (Ala. 1989)."
K.S. v. Carr, 618 So.2d 707, 713 (Ala. 1993).
"Wantonness" is defined as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." § 6-11-20(b)(3), Ala. Code 1975. What constitutes wantonness depends upon the facts presented in a specific case.Kennedy v. Jack Smith Enterprises, Inc., 619 So.2d 1326, 1328
(Ala. 1993). Thus, the question before us is whether the Cackowskis presented sufficient evidence indicating that Wal-Mart acted with reckless disregard for the safety of others generally.
The Cackowskis argue that, based on our decision in HarcoDrugs, Inc. v. Holloway, 669 So.2d 878 (Ala. 1995), we must conclude that they presented sufficient evidence indicating that Wal-Mart acted with a reckless disregard to be entitled to submit their wantonness claim to the jury. They argue that Gilleland should have become suspicious when he filled a prescription for both diet medication and a steroid — which causes weight gain — to be taken at the same time. They also contend that Wal-Mart's failure to employ a clerk or someone else to check that Gilleland correctly filled the prescriptions showed a careless disregard for the safety of its customers.
However, after reviewing the record, we conclude that the Cackowskis presented substantially less evidence of recklessness than was presented in Harco Drugs, Inc. v. Holloway. In Holloway, the plaintiffs presented evidence indicating that the pharmacist attempted to decipher an illegible prescription from an oncologist, with the end result being that a heart medication was substituted for the prescribed cancer-fighting drug. We wrote, "The extreme unusualness of a prescription from a cancer specialist supposedly calling for a dangerous heart medication, combined with the alleged illegibility of the prescription, [was] sufficient evidence of a reckless *Page 327 
disregard of the safety of others to create a jury question as to whether Harco acted wantonly." 669 So.2d at 880. Here, the pharmacist, Gavin Gilleland, testified that he had no problems deciphering the physician's writing. Compare Wal-Mart Stores, Inc. v. Robbins,707 So.2d 284 (Ala.Civ.App. 1997) (wantonness claim upheld where prescription dosage amount was unclear and pharmacist failed to telephone physician to verify dosage). Instead, Gilleland testified, he simply misread the prescription as calling for Prednisone, rather than the called-for Pondimin. This was not a case where the pharmacist should have become suspicious because it would have been unusual for a physician specializing in a particular field to prescribe such a medication. The evidence established that Dr. George Gray was an internist whose practice was concentrated in the areas of preventive medicine, natural medicine, and bariatric medicine. Moreover, because it was the cold and flu season, Gilleland did not think it unusual that a physician would be prescribing a diet drug and a steroid to be taken together. Nor was this a case where the prescription was misfilled repeatedly, as was the case in Holloway. Indeed, when Mrs. Cackowski had the prescription refilled in November, it was correctly filled. When she returned and questioned Gilleland about drowsiness that she had not previously experienced while taking the "generic Pondimin," Gilleland became suspicious, given that there was no generic equivalent for Pondimin. Gilleland's own investigation revealed his error, one that was immediately corrected.
Based on the evidence presented, we conclude that the Cackowskis failed to present substantial evidence of wantonness. Accordingly, we agree with the trial court that the evidence presented was inadequate to justify submitting the wantonness claim to the jury.
 III.
The Cackowskis also contend that the trial court erred in charging the jury that the Cackowskis had to prove their case by "substantial evidence," while, they say, the court required Wal-Mart to prove its affirmative defense of contributory negligence only to the jury's reasonable satisfaction.
An appellate court's standard for reviewing a trial court's charge to the jury is as follows:
 "In a jury case, a party is entitled to have its case tried to a jury that is given the appropriate standard by which to reach its decision, and a wrongful refusal of a requested jury charge constitutes a ground for a new trial. See, C.I.T. Financial Services, Inc. v. Bowler, 537 So.2d 4
(Ala. 1988). An incorrect, misleading, erroneous, or prejudicial charge may form the basis for granting a new trial. See, Nunn v. Whitworth, 545 So.2d 766 (Ala. 1989). However, the refusal of a requested, written instruction, although a correct statement of the law, is not cause for reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the trial court's oral charge. See, Rule 51, Ala.R.Civ.P. When examining a charge asserted to be erroneous, this Court looks to the entirety of the charge to see if there is reversible error. See, Grayco Resources, Inc. v. Poole, 500 So.2d 1030
(Ala. 1986)."
Shoals Ford, Inc. v. Clardy, 588 So.2d 879, 883 (Ala. 1991); see also Sweeney v. Purvis, 665 So.2d 926, 932 (Ala. 1995).
During its oral charge to the jury, the trial court stated, in pertinent part:
 "Let's talk about a pharmacist's duty. Excuse me. In performing professional services for a customer, including filling prescriptions, a pharmacist must use such reasonable care, skill, and diligence as a reasonably competent and prudent pharmacist would use under the same or similar circumstances. This use of reasonable care, skill, and diligence is *Page 328 
sometimes referred to, and I will refer to it, as the standard of care.
 "For a pharmacist to be responsible for damages, his failure to exercise the standard of care must be proven by substantial evidence to your reasonable satisfaction. And further, the plaintiff must also prove, by substantial evidence to your reasonable satisfaction, that the failure to exercise the standard of care proximately caused the damages complained of.
 "In this case there's no dispute about the fact that Gavin Gilleland was the agent, servant, or employee of the defendant Wal-Mart Stores, Incorporated and acting within the line and scope of his employment when he filled the prescription in question.
 "If you're reasonably satisfied by substantial evidence
that Gavin Gilleland breached the standard of care for pharmacists on the occasion in question, and that such breach proximately caused damages to one or both plaintiffs, then the defendant Wal-Mart Stores would be responsible for those damages unless the defendant Wal-Mart stores proved their affirmative defense of contributory negligence.
". . . .
 "Now, the defendant has pled the affirmative defense of contributory negligence. Wal-Mart has asserted as a defense that the plaintiff Brenda Cackowski was, on the occasion complained of, guilty of negligence herself that proximately contributed to her own injuries. If you are reasonably satisfied that this defense was true, it would be a complete defense to the plaintiff's claim.
 "Let's talk about what negligence is for just a moment. Negligence means the failure to exercise reasonable or ordinary care; that is, such care as a reasonably prudent person would have exercised under the same or similar circumstances.
 "Therefore, negligence is the failure to do what a reasonably prudent person would have done under the same or similar circumstances or the doing of something which a reasonably prudent person would not have done under the same or similar circumstances.
 "Contributory negligence then is when the plaintiff does something that a reasonably prudent person would not do under the same or similar circumstances; or when the plaintiff fails to do something that a reasonably prudent person would have done under the same or similar circumstances, and that act proximately causes or contributes to their injuries. If the defendant has reasonably satisfied you of that, then the plaintiffs cannot recover.
 "I have used and will continue to use the term `substantial evidence.' What does the law mean by substantial evidence? It means that character of evidence which would convince an unprejudiced thinking mind of the truth of the fact as to which the evidence is directed.
 "A very important question is who has the burden of proof under the law as to the various claims and defenses made by the parties.
 "First, as to the plaintiffs' claim or claims, they have the burden of reasonably satisfying you from the evidence that, on the occasion complained of, Gavin Gilleland breached the standard of care; that such breach proximately caused the damages or at least some of the damages that they're claiming. The defendant has no burden of disproving any of those things.
 "Second, as to the affirmative defense of contributory negligence, the defendant has the burden of proving that defense to your reasonable satisfaction before it would provide them any defense to the plaintiffs' claims.
 "Now, ladies and gentlemen, if you are satisfied by substantial evidence that the plaintiff is entitled to recover or the plaintiffs are entitled to recover and *Page 329 
you're further not reasonably satisfied of the truth of the defendant's defense of contributory negligence then you're going to have to look to the issue of damages. . . ."
(R. T. 524-29; emphasis supplied.)
The Cackowskis argue that the trial court committed reversible error by instructing the jury on substantial evidence. They cite this Court's recent decision in Ex parte Gradford,699 So.2d 149 (Ala. 1997), in support of their contention. InGradford, we held that the trial court committed reversible error by instructing the jury that the plaintiff's burden was "to reasonably satisfy you by substantial evidence."699 So.2d at 152. However, it should be noted that Gradford involved a "simple" negligence action, as opposed to a medical-malpractice negligence action such as we have before us.[4] As Justice Houston noted in his opinion concurring specially in Johnson v.Wagner, 678 So.2d 782, 783 (Ala. 1996), the standard of proof is different in a medical-malpractice action:
 "Sufficiency of the evidence is a question of law (i.e., whether it was of such `weight and quality' that the jurors could reasonably infer from it each element of the plaintiff's cause of action). That question is for the court to decide.
 "Alabama Code 1975, § 6-5-549, deals with sufficiency of the evidence in medical malpractice cases. The standard of proof required is `substantial evidence.' In addition to this, the legislature provided that in medical malpractice cases, `the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in a like case.' Ala. Code 1975, § 6-5-548(a).
 "`Substantial evidence' is separately defined for medical malpractice cases as `that character of admissible evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed.' Ala. Code 1975, § 6-5-542(5)."
The trial court determined that the Cackowskis' claims against Gilleland and Wal-Mart were governed by the AMLA. As we have previously determined, that decision was correct. Therefore, because the Cackowskis' claims were governed by the AMLA, the trial court correctly instructed the jury that the Cackowskis had to prove their case by "substantial evidence," as expressly required by § 6-5-549, Ala. Code 1975. When taken as a whole, the trial court's instruction fairly and substantially covered the correct standard of proof to be applied in this case. Like the trial court in Johnson v. Wagner, supra, the trial court in this case instructed the jury what the plaintiffs' burden of proof was and explained that burden in accordance with § 6-5-542(5), Ala. Code 1975.
Alternatively, the Cackowskis contend that, in the event this Court determines that the correct standard of proof in this case required them to prove their case by substantial evidence — as prescribed by the AMLA — then the AMLA "would be unconstitutional in its application." Specifically, the Cackowskis argue that "if the plaintiff has a higher burden of proof as to negligence (i.e., by substantial evidence), and the defendant has a lesser burden of proof as to contributory negligence (i.e., only by reasonable satisfaction), then such classifications create and involve unequal and unfair treatment in the application of the law and violate the due process and equal protection of the plaintiffs." Although this specific objection was not made during the trial, it was contained in the Cackowskis' motion for a new trial. *Page 330 
"The Medical Liability Act [of 1975] was the legislature's response to a crisis which developed nationwide in the 1970's."Reese v. Rankin Fite Mem'l Hosp., 403 So.2d 158, 161 (Ala. 1981). Thereafter, the Legislature passed the Medical Liability Act of 1987. The purpose behind this Act was set out in § 6-5-540, Ala. Code 1975, which stated in pertinent part:
 "It is hereby declared by the Legislature of the State of Alabama that a crisis threatens the delivery of medical services to the people of Alabama and the health and safety of the citizens of this state are in jeopardy. In accordance with the previous declaration of the legislature contained in Act 513 of the Regular Session of the 1975 Alabama Legislature it is the declared intent of this legislature to insure that quality medical services continue to be available at reasonable costs to the citizens of the State of Alabama."
In an effort to ensure the continued availability of quality medical services, the AMLA altered the standard of proof in a medical-malpractice case, to require that a plaintiff prove his or her case by "substantial evidence." § 6-5-549, Ala. Code 1975. However, with its adoption of § 12-21-12, Ala. Code 1975, the legislature abolished the "scintilla rule," requiring, instead, that "[i]n all civil actions brought in any court of the State of Alabama, proof by substantial evidence shall be required to submit an issue of fact to the trier of the facts." § 12-21-12(a). Thus, Wal-Mart was also required to prove its affirmative defense of contributory negligence by substantial evidence. Because each side was required to prove its case by substantial evidence, we conclude that § 6-5-549 does not violate the Equal Protection Clause of the United States Constitution, or §§ 1, 6, and 22 of Article I, Constitution of Alabama 1901.
However, the trial court's instruction to the jury was erroneous because it was potentially confusing, misleading, or incomplete. See Jefferson Clinic, P.C. v. Roberson,626 So.2d 1243, 1247 (Ala. 1993); Shumaker v. Johnson, 571 So.2d 991, 994
(Ala. 1990). We note that the trial court appears to have used portions of Alabama Pattern Jury Instructions: Civil, No. 25.21 (2d ed. 1993), in formulating its malpractice charge.
 "While most pattern jury instructions may be properly used in the majority of criminal and civil cases, there may be some instances when using those pattern charges would be misleading or erroneous. In those situations, trial courts should deviate from the pattern instructions and give a jury charge that correctly reflects the law to be applied to the circumstances of the case."
Ex parte Wood, 715 So.2d 819, 824 (Ala. 1998). Given the facts of this case, the trial court should have made it clear to the jury that each party was required to prove its case by substantial evidence to the reasonable satisfaction of the jury. We recognize that this decision conflicts with our holding in Ex parteGradford, supra. However, we note that Gradford remains the law except in the relatively rare situation, such as in the present case, where contributory negligence is an issue in a medical-malpractice case.
The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MADDOX, HOUSTON, COOK, SEE, LYONS, JOHNSTONE, and ENGLAND, JJ., concur.
HOOPER, C.J., concurs in part and dissents in part as to the rationale, and dissents from the judgment.
[1] "Profast" is the brand name for the diet drug "Phentermine," and "Pondimin" is the brand name for the diet drug "Fenfluramine." This combination is commonly referred to as "Phen-Fen" and was widely prescribed until Pondimin was removed from the market in September 1997.
[2] A number of jurisdictions have likewise determined that a pharmacist and/or a pharmacy is a "health care provider" for medical-malpractice purposes. See Lasley v. Shrake's CountryClub Pharmacy, 179 Ariz. 583, 586-87, 880 P.2d 1129, 1132-33
(Ariz.App. 1994); Becker v. Meyer Rexall Drug Co., 141 Mich. App. 481,485, 367 N.W.2d 424, 426 (1985); Boudot v. Schwallie,114 Ohio App. 495, 496, 178 N.E.2d 599, 599-600 (1961). Other jurisdictions have specifically listed pharmacists as one of the classes of medical personnel included within the definition of a "health care provider." See Everett v. Goldman, 359 So.2d 1256,1262 (La. 1978); Bell v. Poplar Bluff Physicians Group, Inc.,879 S.W.2d 618, 621 (Mo.Ct.App. 1994); Swanigan v. American Nat'l RedCross, 313 S.C. 416, 419, 438 S.E.2d 251, 252 (1993); Thompson v.Community Health Inv. Corp., 892 S.W.2d 440, 442 (Tex.Ct.App. 1995), rev'd on other grounds, 923 S.W.2d 569 (Tex. 1996); McKeev. American Home Prods. Corp., 113 Wn.2d 701, 707,782 P.2d 1045, 1048 (1989). Some jurisdictions have declined to include pharmacists within the definition of "health care providers" if they are not specifically mentioned in the statute. See SovaDrugs, Inc. v. Barnes, 661 So.2d 393, 394-95 (Fla.Dist.Ct.App. 1995); Mancuso v. Giant Food, Inc., 327 Md. 344, 352,609 A.2d 332, 336 (1992).
[3] We note that § 6-5-549.1, Ala. Code 1975, enacted after this Court had decided Baker, supplemented the AMLA to include licensed chiropractors within the definition of "health care providers."
[4] Cf. Hayes v. Luckey, 33 F. Supp.2d 987 (N.D.Ala. 1977), for a discussion of Gradford in a medical-malpractice action. The issue in this present case is narrower than the issue before the district court in Hayes.