BOLIN, Justice.
Alice Nail appeals from a summary judgment entered in favor of Publix Super Markets, Inc. (“Publix”), on Nail’s claim alleging a violation of the Alabama Medical Liability Act, § 6-5-480 et seq. and § 6-5-540 et seq., Ala.Code 1975 (“the AMLA”). We reverse and remand.

Facts and Procedural History

On August 7, 2003, Dr. Robert Sorrell performed a total knee arthroplasty on Nail. Following her surgery, Nail suffered from a pulmonary thromboembolism, a blockage of the main artery of the lung. As a result, Dr. Sorrell prescribed Couma-din, an anticoagulant medication. Dr. M. *610 Scott Touger was Nail’s physician following the surgery, and he continued to prescribe Coumadin to treat Nail.
From August 2003 to July 2006, Dr. Touger prescribed for Nail 1-milligram tablets of Coumadin to be taken five times a day. Instead of indicating the specific dosage, however, the prescriptions stated “Use as Directed” or “UAD.” Nail refilled the prescriptions 15 times at a Publix grocery store in Homewood.
On July 10, 2006, Nail telephoned Dr. Touger’s office to obtain a refill for her Coumadin. A nurse in Dr. Touger’s office then telephoned the Publix pharmacy and gave a Publix employee a prescription for 5-milligram tablets of Coumadin to be “used as directed.” Publix has a computer system that tracks its customers’ prescriptions. Publix also had a policy to counsel all of its customers with regard to their prescriptions. Nail picked up her prescription from the Publix grocery store, and, when she did she signed a form indicating that she was declining counseling for the prescription. Nail states that she was not told by the pharmacist that her prescription had been changed from 1-milligram tablets to 5-milligram tablets.
Nail took the 5-milligram Coumadin tablets with the same frequency as she took the 1-milligram Coumadin tablets, i.e., five times a day. As a result, Nail was taking 25 milligrams of Coumadin daily instead of 5 milligrams. On July 19, 2006, Nail went to the emergency room at Brookwood Medical Center complaining of chest pain, back pain, coughing, and bruising on her stomach. Nail was admitted to the hospital, where she was diagnosed with Coumadin toxicity and an epidural hemato-ma of the cervical spinal cord. Nail underwent surgery to remove the hematoma.
On May 6, 2008, Nail sued Publix and Dr. Touger in the Jefferson Circuit Court, alleging that both Publix and Dr. Touger had violated the AMLA. With regard to Publix, Nail alleged as follows:
“a. Defendant Publix negligently and wantonly failed to communicate to Ms. Nail that the dosage of her Coumadin prescription had changed from the previous fifteen (15) filled prescriptions;
“b. Defendant Publix negligently and wantonly failed to counsel Ms. Nail on the effect of the change in dosage of her Coumadin prescription;
“c. Defendant Publix negligently and wantonly failed to train or failed to properly train its pharmacists, agents, or employees on counseling customers with regard to their prescriptions;
“d. Defendant Publix negligently and wantonly failed to properly monitor and police its pharmacists, agents, or employees with regard to whether or not they were properly counseling customers on their prescriptions.
“e. Defendant Publix negligently and wantonly failed to ascertain the skill levels, training or competence of their pharmacists.
“f. Defendant Publix negligently and wantonly failed to have in place any effective method or policy to properly counsel customers with regard to changes in their prescriptions.
“g. Defendant Publix negligently and wantonly failed to establish policies and procedures for counseling customers with regard to them prescriptions.
“h. Defendant Publix negligently and wantonly failed to abide by established policies and procedures for counseling customers with regard to their prescriptions.
“i: Defendant Publix negligently and wantonly failed to establish policies and procedures for counseling customers with regard to changes in their prescriptions.
*611 “j. Defendant Publix negligently and wantonly failed to abide by established policies and procedures for counseling customers with regard to changes in their prescriptions.
“k. Defendant Publix negligently and wantonly failed to establish policies and procedures for reviewing patient files upon receiving prescription orders via telephone, facsimile, or otherwise.
“1. Defendant Publix negligently and wantonly failed to abide by policies and procedures for reviewing patient files upon receiving prescription requests via telephone, facsimile, or otherwise.”
Publix answered and, on June 9, 2010, filed a summary-judgment motion. In support of its motion, Publix included a copy of a “Prescription Insurance Claim and Counseling Log,” which provided:
“The signature directly below of the patient, guardian, or the authorized personal representative of the patient certifies, on behalf of the patient that this pharmacy has offered the patient counseling on the medication dispensed as may be required by state regulations, and that the prescription below was received.
“For Customers with Prescription Drug Coverage: Your signature certifies that the information contained hereon is correct and that the person for whom the prescription was written is eligible for the benefits claims. You authorize the release of all information contained on this log and on the prescription and claim to which it corresponds, to Publix Super Markets and as directed by your prescription drug insurer.
“For Customers with Workers’ Compensation Coverage: Your signature certifies that this medication is for the treatment of an on-the-job injury.”
The log reflected that Nail had signed the log indicating that on July 10, 2006, she was “offered” counseling and received her medication.[1]
Publix also included the testimony of its pharmacist, Alison Walta. Walta testified that one of her duties as a pharmacist was to counsel her patients and that it is Pub-lix’s policy and procedure to counsel every patient. She stated that under a pharmacist’s standard of care, she is to ask the patient if he or she has any questions and to discuss any changes in the medication, including a change in strength or dosage or a change in the drug and to make sure the patient knows the purpose of the medication and what possible side effect to look out for or any problems associated with the medication. Walta testified that she counseled Nail when Nail picked up her prescription for Coumadin on July 10, 2006. However, Walta could not remember precisely what she told Nail. Walta stated that her normal practice with regard to counseling a patient taking Coum-adin was to ask if the patient was being tested to ascertain the effectiveness of blood thinning and if the patient had talked with the patient’s doctor regarding the dosage and how often to take the Coumadin if the prescription was to “use as directed.”
Nail responded to Publix’s summary-judgment motion and attached an affidavit from Roger Lander, a pharmacist. Lander’s affidavit provided, in pertinent part, as follows:
“2. As a licensed pharmacist in the State of Alabama, the appropriate stan *612 dard of care for a pharmacy/pharmacist is to counsel its customers with respect to their prescriptions which include changes in certain medications and dosage.
“3. The reason such a standard of care is applied is due to the fact that the pharmacy/pharmacist is supposed to be the second review, or safety net, with respect to dangerous drugs being given to its customers. This is one of the reasons pharmacies now employ sophisticated computer systems to track customer prescriptions. This way, they can monitor significant changes in medications and drug interactions, and they can notify their customers of any irregularities with ease.
“4. In this case, it is clear that Mrs. Nail’s prescription for Coumadin was changed from one (1) milligram tablets to five (5) milligram tablets. This change represented a significant change in milligrams for a very dangerous drug after a consistent prescription over the course of approximately fifteen (15) prescriptions of one (1) milligram tablets which is clearly shown in the printout from Publix attached hereto as Exhibit ‘A.’
“5. This change should have been clearly indicated to Mrs. Nail and documented as such, and it would be a violation of the standard of care for pharmacies/pharmacists to fail to inform Mrs. Nail of such a significant change in the milligrams of her Coumadin prescription.
“6. In addition, the fact that the prescription was UAD (Use as Directed), informing Mrs. Nail was even more important in light of her previous prescriptions she had obtained from Publix.
“7. According to Mrs. Nail, she was never told about this significant change. If her recollection is accurate, the failure of the Publix pharmacy/pharmacist to inform Mrs. Nail of the change violated the standard of care for pharmacies and pharmacists and resulted in Mrs. Nail consuming twenty-five (25) milligrams of Coumadin per day and her Coumadin toxicity.”
Nail also attached her own affidavit in which she stated that when she picked up her Coumadin prescription from the Publix pharmacy, she was told to sign a sheet. She stated that no one at the Publix pharmacy offered to counsel her regarding the Coumadin and that no one informed her that the strength of the prescription had changed.
The trial court held a hearing on the summary-judgment motion, and on August 19, 2010, the court entered an order in favor of Publix on all claims. On August 23, 2010, the trial court made the order final pursuant to Rule 54(b), Ala. R. Civ. P. Nail timely appealed.

Standard of Review

Our standard of review of a summary judgment is well settled:
“ ‘The standard of review applicable to a summary judgment is the same as the standard for granting the motion....’ McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957, 958 (Ala.1992).
“‘A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the *613 nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present “substantial evidence” creating a genuine issue of material fact — “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” Ala.Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).’
“Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349, 1350 (Ala.1994). Questions of law are reviewed de novo. Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala.2004).”
Pritchett v. ICN Med. Alliance, Inc., 938 So.2d 933, 935 (Ala.2006).

Analysis

In Cackowski v. Wal-Mart Stores, Inc., 767 So.2d 319 (Ala.2000), this Court held that a pharmacist who allegedly incorrectly filled a patient’s prescription was included within the definition of “other health care provider” in the AMLA, and, because the patient’s claims against the pharmacy and pharmacist were governed by the AMLA, the patient had to prove her case in accordance with the AMLA. Under the AMLA, “the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case.” § 6-5-548(a), Ala.Code 1975.
“To prevail on a medical-malpractice claim, a plaintiff must prove 1 “1) the appropriate standard of care, 2) the [pharmacist’s] deviation from that standard, and 3) a proximate causal connection between the [pharmacist’s] act or omission constituting the breach and the injury sustained by the plaintiff.” ’ Pruitt [v. Zeiger ], 590 So.2d [236,] 238 [ (Ala.1991) ] (quoting Bradford v. McGee, 534 So.2d 1076, 1079 (Ala.1988)).”
Giles v. Brookwood Health Servs., Inc., 5 So.3d 533, 549 (Ala.2008).
Nail argues that, based on her affidavit and on Lander’s affidavit, she presented a genuine issue of material fact as to whether Publix, through its pharmacist, breached the appropriate standard of care for pharmacies. Specifically, Nail contends that, based on Lander’s affidavit, Publix had a duty to properly counsel her as to the change in her prescription and that Publix also assumed a duty to counsel its customers based on Walta’s testimony. Nail contends that Publix had a duty to counsel its customers regarding a change in dosage of medication and that Publix failed to do so in this case. Nail also argues that the learned-intermediary doctrine does not apply in this case.
Nail presented expert testimony from Landers, a pharmacist, which stated that the appropriate standard of care for a pharmacy/pharmacist is to counsel its customers with respect to their prescriptions, including any changes in the dosage of the medication. Landers testified that the reason for the pharmacy/pharmacist counseling its patients is that the counseling is supposed to be the second review, or safety net, with respect to dangerous drugs being prescribed to its customers and that this is one of the reasons pharmacies now employ sophisticated computer systems to track customer prescriptions — so the pharmacies can monitor significant changes in medications and spot potential drug interactions. Landers opined that if Nail’s rec *614 ollection that Walta failed to counsel her regarding the change in dosage is correct, then Walta breached the standard of care, which resulted in Nail’s Coumadin toxicity.
Walta testified that, as a pharmacist, she had a duty to counsel Nail regarding her prescription. She testified that although she could not remember the specific conversation that she had with Nail, she would have counseled any customer who was picking up medication if there had been a change in dosage. In its summary-judgment motion, Publix included the log-in sheet that Nail signed regarding Pub-lix’s offer of counseling and Nail’s receipt of her prescription. In opposition to Pub-lix’s summary-judgment motion, Nail testified that she was not counseled by Walta and that she was not told that the strength of her medication had been changed. She stated that she signed a sheet that she thought indicated only that she had received her prescription.
There was evidence of the standard of care applicable to a pharmacist, i.e., that a pharmacist has a duty to counsel customers on a change in dosage of any medication. The evidence submitted by both parties in support of and in opposition to the motion for a summary judgment presents a question of fact as to whether Nail was counseled regarding the change in her prescription for Coumadin from a 1-milli-gram tablet to a 5-milligram tablet. Viewing the evidence in a light most favorable to Nail, as we are required to do, the conflict in testimony supports Nail’s argument that there is a genuine issue of material fact as to whether Walta counseled Nail regarding the change in dosage. The question we must now answer is whether the learned-intermediary doctrine applies to Nail’s claims against Publix, barring the pharmacy from liability.
In Stone v. Smith, Kline & French Laboratories, 447 So.2d 1301 (Ala.1984), this Court adopted the learned-intermediary doctrine in a case addressing whether a manufacturer’s duty to warn extends beyond the prescribing physician to the physician’s patient who would ultimately use the drugs. The principle behind the learned-intermediary doctrine is that prescribing physicians act as learned intermediaries between a manufacturer and the consumer/patient and, therefore, the physician stands in the best position to evaluate a patient’s needs and assess the risks and benefits of a particular course of treatment. In Walls v. Alpharma USPD, Inc., 887 So.2d 881, 882 (Ala.2004), we applied the learned-intermediary doctrine to address whether a pharmacist has a “duty to warn of foreseeable injuries from the use of the prescription drug he/she is dispensing.” In Stone and Walls, the duty at issue was a drug manufacturer’s or a drug dispenser’s duty to warn customers of the potential risks or side effects of a drug. In Springhill Hospitals, Inc. v. Larrimore, 5 So.3d 513 (Ala.2008), we applied the learned-intermediary doctrine in a situation where a patient alleged that a pharmacist breached a duty by providing incomplete dosing information to the patient’s physician regarding a drug prescribed to the patient. We noted that the learned-intermediary doctrine addresses the question of liability in light of the relationships between the parties involved in the prescribing, distribution, and use of prescription drugs. In Springhill, the patient argued that the pharmacist voluntarily undertook to give the physician information about the proper dosage in administering the drug. In addressing the patient’s argument that the pharmacist assumed a duty of care, this Court stated:
“The cases cited by the estate are readily distinguishable from this one and therefore unpersuasive. In each case *615 cited, the respective court found that the pharmacy or pharmacist had voluntarily undertaken a duty to the customer based on the interactions between the pharmacist and the customer. None of those cases addresses the voluntary assumption of a duty based on a pharmacist’s interaction with the customer’s physician. See Ferguson [v. Williams ], 101 N.C.App. [265,] at 272, 399 S.E.2d [389,] at 393 [ (1991) ] (‘A druggist simply has the duty to act with due, ordinary care and diligence in compounding and selling drugs.... [H]owever, ... if a pharmacist undertakes to advise a client concerning a medication, the pharmacist is under a duty to advise correctly.’); Baker [v. Arbor Drugs, Inc.], 215 Mich.App. [198,] at 205-06, 544 N.W.2d [727,] at 730-31 [ (1996) ] (‘[T]here is no legal duty on the part of a pharmacist to monitor and intervene in a customer’s reliance on drugs prescribed by a licensed treating physician.... [However], defendant [Arbor Drugs, Inc.] voluntarily assumed a duty of care when it implemented the Arbortech Plus [computer] system and then advertised that this system would detect harmful drug interactions for its customers.’); Cottam [v. CVS Pharmacy ], 436 Mass. [316,] at 323-26, 764 N.E.2d [814,] at 821-23 [ (2002) ] (‘A pharmacy, like any other person or entity, may voluntarily assume a duty ... to provide information, advice or warnings to its customers.... [T]he scope of the duty voluntarily undertaken by a pharmacy is a fact-specific inquiry based on the totality of the pharmacy’s communications with the patient and the patient’s reasonable understanding, based on those communications, of what the pharmacy has undertaken to provide.’).
“Moreover, the pharmacist in Ferguson had specific knowledge related to the patient’s medical history, and in Baker the pharmacy had taken steps to provide warnings based on the customer’s individual medication profile. Ferguson, 101 N.C.App. at 272, 399 S.E.2d at 394 (‘It is undisputed that [the pharmacist] knew that Ferguson was allergic to Percodan.... It is also clear she knew that Ferguson had suffered from an anaphylactic reaction to Percodan.’); Baker, 215 Mich.App. at 205, 544 N.W.2d at 731 (‘Plaintiff has presented evidence that defendant implemented, used, and advertised through the media that it used, the Arbortech Plus computer system to monitor its customers’ medication profiles for adverse drug interactions.’). Here, there is no evidence indicating that [the pharmacist] knew anything of [the decedent’s] medical history.
“Further, the standard of care put forward by the estate would place the physician in a position adjunct to the pharmacist, resulting in exactly the situation our decisions in Walls [v. Alpharma USPD, Inc., 887 So.2d 881 (Ala.2004),] and Stone [v. Smith, Kline & French Laboratories, 447 So.2d 1301 (Ala.1984),] sought to prevent, asking the pharmacist to intrude himself or herself into the physician-patient relationship and requiring the pharmacist to give advice or take actions that he or she is neither licensed nor trained to give or take. See Walls, 887 So.2d at 886 (‘ “ ‘[The physician’s standard of care regarding] proper dosages of medication is not within the scope of matters on which nonphysicians are competent....’ ‘[Pharmacists are not doctors and are not licensed to prescribe medication because they lack the physician’s training in diagnosis and treatment.’ ” ’ (quoting McKee [v. American Home Prods. Corp.], 113 Wash.2d [701,] at 711, 782 P.2d [1045,] at 1051 [ (1989) ], *616 quoting in turn Young [v. Key Pharmaceuticals, Inc.], 112 Wash.2d [216,] at 280, 770 P.2d [182,] at 190 [ (1989) ])).
“In light of the foregoing, we are unpersuaded by the estate’s argument that [the pharmacist] voluntarily assumed a duty of care when he answered Dr. McMahon’s question about dosing colchi-cine. Because we find the principles articulated in Walls and Stone applicable to this case, we hold that the learned-intermediary doctrine precludes [the hospital’s] liability for harm resulting from any mistakes on Dr. McMahon’s part in prescribing colchicine. In light of that holding, we hold that the estate, therefore, did not present ‘substantial evidence ... to produce a factual conflict warranting jury consideration,’ Jones Food Co. v. Shipman, 981 So.2d [355,] at 360-61 [ (Ala.2006) ], and that [the hospital] was entitled to a judgment as a matter of law on this issue. Our decision on this issue pretermits consideration of the other issues argued by [the hospital] on this appeal.”
5 So.3d at 520-21 (footnote omitted).
In the present case, Nail argues that Publix had a duty to tell her that her dosage had changed. Nail is not arguing that the pharmacist at Publix should have told her the risks or side effects of Couma-din. Under the learned-intermediary doctrine, the pharmacist does not have a duty to warn customers of the hazardous side effects either orally or by way of the manufacturer’s package insert. We have also applied the learned-intermediary doctrine to bar a pharmacy’s liability where a pharmacist gave a physician incomplete dosing information. Springhill. The drug manufacturer has the initial duty to warn the prescribing physician of side effects and to give dosing guidelines, and the physician acts as the learned intermediary between the drug manufacturer and the patient when prescribing the drug. Pharmacists dispense medication prescribed by physicians, who are in the best position to evaluate the needs and proclivities of their patients. However, Nail is arguing that the pharmacist should have told her that there was a significant change in her dosage of a very dangerous drug, not that Publix should have warned her against any possible harm in taking that dosage amount. Notifying a customer that there has been a change in prescription strength does not infringe upon the physician-patient relationship. Accordingly, we cannot say that the learned-intermediary doctrine bars Nail’s claim against Publix.
Based on the foregoing, the judgment of the trial court is reversed and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
COBB, C.J., and WOODALL, STUART, PARKER, MAIN, and WISE, JJ., concur.
SHAW, J., concurs in the result.
MURDOCK, J., dissents.

. Next to the signature line where Nail signed her name on the form, there are two boxes indicating whether counseling was "accepted” or "refused.” There is check mark indicating that Nail accepted counseling and initials next to the boxes. There was no testimony reflecting who "checked” the box or whose initials were beside the check.