Jennifer Adams was injured in an automobile accident on December 14, 1987, at the intersection of County Road 86 and County Road 45 in Coffee County, Alabama. She was a passenger in a car driven *Page 894 
by Carolyn Dare. Both Adams and Dare filed complaints against Coffee County based on their injuries, and the two cases were consolidated for trial. A jury returned a verdict for Coffee County, and the court entered a judgment on the verdict. Only Adams appeals.
Adams's complaint alleged that Coffee County negligently or wantonly failed to maintain traffic control devices it had placed at the intersection of County Roads 86 and 45 and that this failure to maintain the devices proximately caused the automobile in which Adams was a passenger to collide with another automobile and thus proximately caused Adams to suffer serious injuries. Adams argues that the trial court erred in four respects: 1) in refusing to direct a verdict for Adams on the basis that the evidence was undisputed that one of Coffee County's employees had notice that the signs at the intersection were damaged; 2) in refusing to direct a verdict for Adams on the County's defense of contributory negligence; 3) in charging the jury that, if it was in a state of confusion after all of the evidence was presented, its verdict could not be in favor of the plaintiffs; and 4) in its answer to a question posed by the jury regarding the authority of a county to remove signs it had erected.
The evidence showed that the accident occurred in the following manner: Dare and Adams were traveling west on County Road 86, approaching the intersection where County Road 86 ended at a "T" intersection with County Road 45. As Dare prepared to turn left onto County Road 45 and moved her vehicle into the intersection, a car approaching from the right on County Road 45 collided with Dare's car. The plaintiffs alleged that Coffee County had negligently failed to maintain a stop sign and a hazard board[1] warning drivers on County Road 86 to stop at the intersection.
Adams contends that the trial court erred in denying her motion for a directed verdict. This Court, when reviewing a trial court's ruling on a motion for directed verdict, must view all evidence in a light most favorable to the nonmovant and determine whether there was sufficient evidence to produce a conflict warranting jury consideration. Ogle v. Long,551 So.2d 914 (Ala. 1989); see also Campbell v. Alabama Power Co.,567 So.2d 1222, 1224 (Ala. 1990).
Because of its exclusive authority to maintain and control its roadways, a county is under a common law duty to keep these roadways in repair and in a reasonably safe condition for their intended use. Elmore County Comm'n v. Ragona, 540 So.2d 720
(Ala. 1989). A county's standard of care is to "keep its streets in a reasonably safe condition for travel, and to remedy defects in the roadway upon receipt of notice." JeffersonCounty v. Sulzby, 468 So.2d 112, 114 (Ala. 1985).
Adams maintains that the county had actual knowledge, before the accident, that a hazard board and a stop sign located at the intersection were in a state of disrepair. Several witnesses testified that the signs at the "T" intersection of County Roads 86 and 45 had been in disrepair. Also, Enterprise city councilman Richard Fleming testified that, before this accident occurred, a woman who lived near the intersection had telephoned to tell him that a "dead end" sign was down. Fleming further testified that he then telephoned an employee at the county's highway department, Orville Shipman, and reported to Shipman that the sign was down. He said he did not, however, recall when he had telephoned Shipman. Shipman testified that he made a note about Fleming's call indicating that a stop sign needed repairing and that he orally told the superintendent of the Coffee County Highway Department about the needed repairs. The superintendent testified that, before the accident involving Adams, he had never received a call from anyone regarding the condition of the signs at the intersection of County Roads 45 and 86. *Page 895 
Shipman could not testify as to when Fleming called him to inform him that the sign was down. From the evidence, Fleming's call to Shipman could have been two weeks before Adams's accident or it could have been the day before, in which case, the county would not have had adequate time to repair the sign. Thus, the evidence did not show without dispute that Coffee County had notice of the needed repair in time to repair the sign, and there were questions of fact for the jury. Therefore, this argument presents no ground for reversing the denial of Adams's motion for a directed verdict.
Adams also argues that the trial court erred in denying her motion for a directed verdict, because, she claims, there was no evidence that she was contributorily negligent.
Generally, the issue of whether a person is contributorily negligent is a question of fact for the jury. Electric Serv.Co. of Montgomery v. Dyess, 565 So.2d 244 (Ala. 1990). Even where the evidence does not conflict, the question whether a person has exercised due care is still normally a question of fact for the jury to determine. Patterson v. Seibenhener,273 Ala. 204, 137 So.2d 758 (1962).
In order to impute the negligence of the driver of an automobile to a passenger, the passenger must have had some authority or control over the car's movement, such as some right to a voice in the management or direction of the automobile. Banks v. Harbin, 500 So.2d 1027 (Ala. 1986); Brownv. AAA Wood Products, Inc., 380 So.2d 784 (Ala. 1980). A passenger is not relieved from all personal care for his or her own safety, but instead has the duty to exercise reasonable care to prevent injury. Brown, at 787.
Therefore, the duty of the passenger is not original with respect to the operation of the automobile, "but is resultant and is brought into effect by known and appreciated circumstances." The duty arises when the passenger "should [anticipate that] the driver of the vehicle will enter the sphere of danger, or omit to exercise due care, not when he has the opportunity to anticipate the danger without anything to direct his attention to a condition requiring him to anticipate the vehicle is about to enter the sphere of danger or requiring him, in the exercise of ordinary care, to keep a lookout."Id.
The evidence in the present case was sufficient to create a jury question as to whether Adams was contributorily negligent. Both Dare and Adams testified that they had been at the home of Adams's sister, that they had then gone to Adams's house to get a change of clothes, and that when the accident occurred they were returning to the home of Adams's sister. In traveling from her sister's house to her own house, Adams noticed, as they turned right from County Road 45 to County Road 86, that the stop sign and the hazard board for County Road 86 were down. She testified that she was aware of the absence of the signs because, she said, she always paid attention to things like that and because "whenever you turn onto a road the back of a sign reflects." She did not point this out to Dare at the time, nor did she warn Dare as they were returning. Dare testified that she was getting all of her directions to and from Adams's house, such as when to slow down or to turn, from Adams. Adams testified that Dare was not familiar with the route they were taking from the home of Adams's sister to Adams's house.
Under the facts of this case, the trial court properly submitted the question of Adams's contributory negligence to the jury. The jury could have reasonably concluded that Adams maintained a voice in the control and direction of the car because she was giving directions to Dare. Also, because the accident did not occur until the return trip from Adams's house, it was reasonable for the jury to find that Adams had the opportunity to anticipate that Dare would be entering the sphere of danger because she noticed, on the way to her house, that the signs were down, and that Adams, in using ordinary care, should have kept a lookout. See Brown, supra. Therefore, because there was substantial evidence from which the jury could have *Page 896 
determined that Adams was contributorily negligent, the trial court properly denied Adams's motion for a directed verdict.
Adams further argues that the trial court committed reversible error by giving the following charge to the jury:
 "The court charges the jury that if after consideration of all of the evidence in this case, your minds are in a state of confusion as to whether the Plaintiffs are entitled to recover from the Defendant, Coffee County, then your verdict cannot be for the Plaintiffs in this case."
Adams argues that this charge placed an undue burden of proof on her and served only to confuse the jury on the true burden of proof in the case.
This Court, however, in Jones v. Berney, 288 Ala. 423,261 So.2d 745 (1972), held that the giving of a charge almost identical to the charge in the present case was not reversible error. The charge given in Jones was as follows:
 "I charge the jury that if after a fair consideration of all the evidence, your mind is left in a state of confusion as to whether or not plaintiff is entitled to recover from the defendant, Berney, you cannot find for the plaintiff, against the defendant, Berney."
288 Ala. at 427, 261 So.2d at 748.
The Jones Court held that the giving of such a charge was not error and also held that a refusal of the charge would not have been error either. The Jones court also did a thorough job of distinguishing the Jones charge from charges in other cases that had been held to be erroneous. For example, a charge instructing a jury to return a verdict for the defendant if the mind of the jury was in "a state of doubt or confusion as to whether or not the plaintiff is entitled to a verdict" or if it is "uncertain in your minds," places too great a burden of proof on the plaintiff. Jones, supra. The charge in the present case did not include "state of doubt" or "uncertain in your minds" and, therefore, it was not error for the trial court to give the charge.
Last, Adams contends that the trial court committed reversible error when, in response to a question asked by the jury after deliberations had begun, it instructed the jury that it was a question of fact as to whether the county had the authority to remove road signs.
After deliberations had begun, the jury returned with the following question:
 "Does the county have the right or the authority to remove a sign once they have had it established?"
The court, out of the presence of the jury, discussed with the attorneys how the question should be answered. Adams's attorney stated that he was concerned about the jury's confusion in this matter because there had been no evidence in the case that the county had ever made a decision to take the signs down and, therefore, he said, it was not an issue.
The judge charged the jury that "without going through the law again . . . [t]his is a question of fact, not a question of law, to be decided by you, the ladies and gentlemen of the jury." In her brief, Adams argues that the trial court's instruction improperly informed the jury that it could determine whether the county had a duty to maintain the sign. We do not agree.
A county certainly has the authority to remove traffic control devices, but the question of whether such a removal would be a breach of the county's duty could be question for the jury under the circumstances of the case. Thus, the trial court's instruction did not allow the jury to determine whether the county had a duty to maintain the road "in a reasonably safe condition for travel," but only whether the failure to keep the sign in place had violated that duty.
In its original charge to the jury, the court adequately and correctly instructed the jury that "once a county has elected to erect traffic control devices it has a duty to maintain those devices in a condition conducive to the safe flow of traffic and would be liable for its negligence in failing to do so." We find no merit in Adams's argument on this issue. *Page 897 
For the foregoing reasons, the judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur.
[1] A hazard board is two signs, one with alternating yellow and black diagonal lines, and the other with arrows pointing left and right. *Page 898