Rel: October 4, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2024

––––––––––––––––––––

### SC-2023-0294

––––––––––––––––––––

**Frances Koe, M.D., and Wills Valley Family Medicine, LLC**

**v.**

**Donna Ratliff, as personal representative of the Estate of Rhoda Gail McBride, deceased**

**Appeal from DeKalb Circuit Court
(CV-18-900266)**

SELLERS, Justice.[1]

––––––––––––––––––

[1]This case was originally assigned to another Justice on this Court; it was reassigned to Justice Sellers on August 21, 2024.

Donna Ratliff, as the personal representative of the estate of Rhoda Gail McBride, deceased, commenced a wrongful-death medical-malpractice action in the DeKalb Circuit Court against Frances Koe, M.D., and Wills Valley Family Medicine, LLC ("Wills Valley"). A jury returned a verdict in favor of Dr. Koe and Wills Valley. The trial court, however, entered a judgment granting Ratliff's motion for a new trial and vacated the jury's verdict. Dr. Koe and Wills Valley appealed. We reverse the trial court's judgment.

On November 3, 2016, McBride sought treatment for leg pain at a medical clinic operated by Wills Valley. McBride's daughter, Ratliff, attended the appointment with McBride. Ratliff testified that McBride had lived with her at that time but that McBride had been able to handle most of her own medical decisions, had handled her own medications, had had her own transportation, and had been very independent until she had developed the leg pain. Ratliff testified that she had attended some, but not all, of McBride's medical appointments. However, the evidence indicates that McBride authorized Ratliff to communicate with health-care providers regarding McBride's care and to allow Ratliff to be counseled on McBride's behalf regarding medication.

2

A nurse practitioner employed by Wills Valley, Brandi Ware, referred McBride to an imaging center for an ultrasound, which took place on December 2, 2016. The ultrasound revealed that McBride was suffering from a blood clot. Ware consulted with Dr. Koe regarding the blood clot, and Dr. Koe instructed that McBride was to be prescribed Coumadin, a blood thinner. According to Dr. Koe, she told Ware that McBride would need to have her blood tested promptly for thinness and would possibly need to do so every week thereafter. Ware had a medical assistant employed by Wills Valley, Summer Gilreath, call McBride on her telephone to inform her of the diagnosis and that she needed to take Coumadin and come in for a blood test at the beginning of the next week. Ratliff's testimony suggests that she answered McBride's telephone. Although Gilreath testified that she did not specifically remember her conversation with Ratliff, she stated that she would have followed established protocol, which called for her to relay to patients that Coumadin is a blood thinner that can cause bleeding, that patients are to follow up a week after starting Coumadin, and that weekly blood tests are necessary to test the thickness of a patient's blood while taking the medication. Ratliff, however, denied that Gilreath had told her that

McBride would need weekly blood tests. There is no evidence indicating that Dr. Koe or nurse practitioner Ware spoke with McBride or Ratliff about Coumadin or the need for blood tests.[2]

After her telephone conversation with Gilreath, Ratliff dropped McBride off at their home and went to a pharmacy to retrieve the Coumadin. Pharmacist Andrea Ashley dispensed McBride's Coumadin prescription. Ratliff claimed that she had asked Ashley whether there was anything Ratliff needed to know about the medication because McBride had never taken it. Although Ashley did not specifically remember her conversation with Ratliff, her standard practice would have been to inform patients that Coumadin is a blood thinner with a high risk of causing bleeding; to instruct patients that they should not take certain medications, such as NSAIDs, with Coumadin; to instruct

_____

[2]As Dr. Koe and Wills Valley put it in their briefing to this Court, Ratliff "attempted to insulate McBride from Ratliff's communications with healthcare providers when … seeking post-trial relief from the jury's verdict." Dr. Koe and Wills Valley's reply brief at 3. She makes the same attempt on appeal. It appears, however, that it was undisputed during the trial that Ratliff was McBride's authorized agent for purposes of receiving information regarding her health care and prescription medications. It does not appear that there was ever any objection lodged during the trial directed at the relevancy of communications between health-care providers and Ratliff on behalf of McBride. Indeed, Ratliff herself relied extensively on those communications.

4

patients to stay aware of bleeding and to control bleeding if it occurs; and to ask patients whether they have a follow-up appointment with their doctors. Ashley, however, admitted that any "medical advice" would have needed to come from McBride's doctors and that McBride's doctors would have been responsible for setting up the necessary blood tests. For her part, Ratliff testified that she was never informed that Coumadin is a blood thinner or about the necessity for regular blood tests.

Ashley also testified that her standard practice included stapling a medication guide, which is required by law, to the prescription bag. Coumadin's medication guide contains numerous "black box" warnings regarding Coumadin, including the possibility of "very bad and sometimes deadly bleeding," and advises of the need for a test that measures whether a patient's blood has become too thin. Specifically, the guide states, among other directives:

> "You will need to have your blood work (PT/INR) checked while you take this drug. This is important to make sure the drug works right and to check your risk of bleeding. Have your PT/INR checked as you have been told by your doctor or other healthcare provider. If you are not sure when you need to have your PT/INR checked, call your doctor or other healthcare provider."

The Coumadin prescription bottle specifically instructs users of the medication to review the medication guide. Ratliff acknowledged that a medication guide could have been stapled to the prescription bag, but she claimed that she did not remember seeing it. Ratliff also testified that she never gave the prescription bag or a medication guide to McBride.

On December 6, 2016, consistent with Wills Valley's protocol that Coumadin patients follow up in a week, Ratliff took McBride for a blood test at Wills Valley's medical clinic. Gilreath testified that she could not recall whether she or another medical assistant had collected McBride's blood on that day. According to Gilreath, regardless of who worked with McBride, each of the medical assistants would have followed the same protocol to inform McBride that the purpose of the blood test was to check the thickness of her blood and that it was important to return the following week for an additional blood test.

Dr. Koe testified that the standard for testing a patient who has been prescribed Coumadin varies based on the patient's initial test results. Dr. Koe testified that, after a patient's first blood test, her staff would "usually tell them when to return" and that, in McBride's case, "we needed to tell [McBride] she needed to come back in a week." Dr. Koe

explained that further testing would depend on the thinness of the patient's blood and that patients did not need to make specific appointments in order to obtain additional blood tests. Based on her and her staff's standard procedure, Dr. Koe testified that she was confident that McBride had been instructed to return in a week for another blood test, and Gilreath testified that she did not think it possible that McBride had not been so advised. Ratliff, however, testified that she and McBride left after McBride's blood had been collected and that no one had told her or McBride of the need to return for more testing.

Ratliff testified that she had not received any results of the blood test by December 12, 2016, and that she had called Wills Valley to schedule an appointment to learn more about McBride's condition and medication. McBride's telephone records indicate that, on December 12, two calls were made from McBride's telephone to Wills Valley and that, subsequently, two calls were received on McBride's telephone from Wills Valley. McBride's medical records contain an entry for December 12 that reads as follows: "f/u [follow up] on lab results/blood thinner meds/wants more education." McBride was scheduled for an appointment to occur on December 14, 2016. Dr. Koe testified that the appointment was not

7

specifically made for the purpose of conducting another blood test, but her testimony suggests that a blood test could have been conducted at that time. Ratliff testified that she and McBride had been unaware of any plan for conducting another blood test on that date. In any event, on the day of the appointment, McBride asked Ratliff to cancel her appointment because she was suffering from gastrointestinal issues. Ratliff called Wills Valley and left a voicemail message canceling the appointment. McBride's telephone records indicate that her telephone received a subsequent call from Wills Valley the same day.

Ratliff testified that, on December 19, 2016, she received an automated telephone message from Wills Valley suggesting that McBride had missed an appointment and instructing her to call Wills Valley to reschedule. The defendants presented evidence indicating that someone from Wills Valley had returned Ratliff's call on December 14, 2016, that an appointment had been rescheduled for December 21, 2016, and that the December 19 automated telephone message was simply a reminder of the December 21 rescheduled appointment. The evidence also indicated that someone had "pressed 1" on the telephone that had received the automated telephone message, which served to confirm the

appointment for December 21. McBride's grandson, who had lived with her and Ratliff during the relevant period, testified that he remembered McBride missing the December 14 appointment because of illness and that "she said she was going to reschedule." He testified that McBride or Ratliff had told him that an appointment had been rescheduled for "close to Christmas." For her part, Ratliff testified that she had not been aware of an appointment on December 21 and that she did not know who would have confirmed that appointment. In any event, McBride did not attend an appointment on December 21.

On December 24, 2016, McBride suffered a brain bleed, and she died the following day. Testing showed that her blood was too thin and that she had suffered from "Coumadin toxicity." Ratliff testified that, if she or McBride had known of the need for follow-up blood testing, she would have ensured that McBride had had that testing.

The trial court denied Ratliff's motion for a judgment as a matter of law on the subject of McBride's alleged contributory negligence and agreed to charge the jury on that defense. The trial court instructed the jury as follows:

> "The defendants, Dr. Koe and Wills Valley Family Medicine, say that Rhoda McBride's conduct in failing to

return to the clinic for the December 14th and 21st appointments was negligent and that it caused -- and that it was a cause of her harm. This is called contributory negligence, and it is a defense to the plaintiff's claim that Dr. Koe and Wills Valley Family Medicine were negligent. Contributory negligence is the failure to use reasonable care to prevent harm to one's self. The defense of contributory negligence pertains solely to the December 14th and 21st appointments.

"To prove this defense, the defendants must prove to your reasonable satisfaction by substantial evidence all of the following. That Rhoda McBride had knowledge of the existence of the December 14th and December 21st appointments, that Rhoda McBride appreciated the danger of missing the December 14th and December 21st appointments, and that Rhoda McBride failed to exercise care for her own safety by putting herself in the way of danger. If you find … that these three elements were proven by substantial evidence, then you would find Rhoda McBride guilty of contributory negligence if you determine her negligence proximately caused her harm. Alternatively, if you find that these three elements were not proven by substantial evidence, then you would find that Rhoda McBride was not guilty of contributory negligence."

Dr. Koe and Wills Valley refer to this charge as "blending contributory negligence and assumption of the risk." Dr. Koe and Wills Valley's brief at 36. They appear to suggest that a contributory-negligence defense does not necessarily require proof that a plaintiff subjectively "appreciated the danger" and chose to put herself in harm's way. Id. They note that they asked the trial court to use a pattern jury instruction

10

providing simply that they had to prove that McBride "was negligent" and that her "negligence was a cause of her harm." Id. at 44-45. However, they also state in their brief to this Court that the jury instruction that was allegedly a "more strenuous definition of what was required [in proving contributory negligence]" is "not assigned as error here." Id. at 36-37.

The jury returned a verdict for the defendants, and Ratliff filed a renewed motion for a judgment as a matter of law on contributory negligence and a motion for a new trial. The trial court granted Ratliff's motion for a new trial, concluding that the defendants had not presented sufficient evidence supporting their contributory-negligence defense and that the trial court had, therefore, erred in submitting that defense to the jury. According to the trial court:

> "[T]he defendants failed to present substantial evidence that Ms. McBride's actions deviated from what a reasonably prudent person would have done in the same or similar circumstances, proximately contributing to her injuries and death.
>
> "....
>
> "... Alabama case law is clear: there must be some understanding of the danger to determine if the [injured person] acted as a 'reasonably prudent person' would act, and to determine if that person's actions proximately caused his

11

or her injury. The Court finds this to be especially true in a matter involving complex medical knowledge not known to a reasonably prudent layperson.

"Here, the record reveals no substantial evidence that Ms. McBride knew or should have known of the importance of <u>continued</u> visits to Dr. Koe's office for blood work. Absent being told by a medical professional to continue reporting for blood work, a reasonably prudent layperson would not know to do so. …

"The only appearance in the record where [McBride] was specifically informed to report for blood work -- when Summer Gilreath telephoned her the day of Ms. McBride's diagnosis -- Ms. McBride did exactly that. There are no other instances in the record where Dr. Koe, or anyone at her direction, told Ms. McBride that she needed to <u>continue</u> reporting for blood work.

"….

"… Moreover, even if knowledge or appreciation of danger were not required, there is still a lack of substantial evidence in the record that Dr. Koe, or anyone at her direction, informed Ms. McBride to continue reporting for blood work or that anyone in Dr. Koe's office scheduled Ms. McBride for additional blood work after the first appointment."

(Emphasis in original.) The trial court subsequently denied the defendants' motion to vacate the judgment granting a new trial, and this appeal followed.

Ratliff relies on a very deferential standard that has been generally applied to a trial court's judgment ordering a new trial. According to Ratliff, the trial court's judgment is entitled to a presumption of

12

correctness and should be affirmed unless the record plainly and palpably shows error. See Beauchamp v. Coastal Boat Storage, LLC, 4 So. 3d 443, 450 (Ala. 2008). However, when a new trial is ordered because a jury's verdict allegedly is against the great weight and preponderance of the evidence, "[a]n order granting a new trial shall be reversed when on review it is perceivable that the jury verdict is supported by the evidence." Mitchell v. Johnson, 641 So. 2d 238, 239 (Ala. 1994) (citing Jawad v. Granade, 497 So. 2d 471 (Ala. 1986)).

> "'While the "new trial" test is a subjective one ... and is measured by a discretionary standard, the range of the trial court's discretion, as announced in Jawad [v. Granade, 497 So. 2d 471 (Ala. 1986)], has been considerably narrowed. Thus, the trial court is left with no discretion to grant a new trial on a "weight of the evidence" ground, except when the verdict and the judgment entered thereon are so against the great weight and preponderance of the evidence as to be "plainly and palpably" wrong, i.e., "manifestly unjust."'"

Lemley v. Wilson, 178 So. 3d 834, 841 (Ala. 2015) (quoting Richardson v. Joines, 574 So. 2d 787, 787-88 (Ala. 1991)).

According to Ratliff, however, the trial court's judgment in this case was based on reasons other than, or in addition to, a determination that the evidence did not support the jury's verdict, namely, the alleged "erroneous submission[ ] of a contributory negligence jury instruction to

13

the jury." Ratliff's brief at 30. Thus, she says, we must apply the more deferential plain-and-palpable-error standard. See Beauchamp, supra.

The trial court ordered a new trial because, it concluded, the defendants had failed to submit sufficient evidence supporting their contributory-negligence defense and the jury's verdict therefore could not validly rest upon that defense. The alleged insufficiency of the evidence is the reason the trial court gave in opining that it should not have submitted the issue of contributory negligence to the jury and that a new trial was warranted. Thus, the judgment under review appears most akin to one that orders a new trial based on a trial court's conclusion that a jury's verdict is not supported by the evidence. See Mitchell, supra (applying the great-weight-and-preponderance-of-the-evidence standard to a trial court's ruling that a new trial was warranted after a jury's defense verdict because the defendant had not offered sufficient evidence in support of her affirmative defense alleging a "sudden emergency" and, therefore, that issue had been incorrectly submitted to the jury). Accordingly, we will reverse the trial court's judgment if it is "perceivable" that the jury's verdict was supported by the evidence. Mitchell, supra. This Court has indicated that a contributory-negligence

14

defense in a medical-malpractice action must be proven to a jury by substantial evidence. Cackowski v. Wal-Mart Stores, Inc., 767 So. 2d 319, 330 (Ala. 2000). Finally, determinations on questions of law are reviewed de novo. Bethel v. Franklin, 381 So. 3d 1121, 1126 (Ala. 2023).

Initially, Dr. Koe and Wills Valley frame one of the disputes in this case as whether the trial court erred in concluding that the defendants, in order to support their contributory-negligence defense, had to prove that "Dr. Koe 'told' or 'informed' McBride to continue reporting for blood work" so that she appreciated the danger of failing to have her blood regularly tested and the hazardous nature of blood that is too thin. Dr. Koe and Wills Valley's brief at 37. According to Dr. Koe and Wills Valley, such a requirement implicates assumption of the risk, not contributory negligence. See McKerley v. Etowah-DeKalb-Cherokee Mental Health Bd., Inc., 686 So. 2d 1194, 1197 (Ala. Civ. App. 1996) (cited by Dr. Koe and Wills Valley and stating that, in considering whether assumption of the risk may properly be submitted to the jury, the reviewing court "look[s] at whether the plaintiff knew of the risk, not whether he should have known of it"). They appear to suggest that, regardless of whether McBride subjectively knew of the danger of excessive bleeding and of the

15

danger of failing to obtain further blood tests, there was sufficient evidence indicating that, acting reasonably, she <u>should</u> have known of those dangers. In support, they point to precedent such as <u>H.R.H. Metals, Inc. v. Miller</u>, 833 So. 2d 18 (Ala. 2002), in which the Court disapproved of a jury charge on contributory negligence because, in requiring proof that the plaintiff "'had knowledge of the existence of the dangerous condition'" and conscious "'appreciation of such danger,'" <u>id.</u> at 26, the charge "engrafted a subjective standard (conscious appreciation) onto the contributory-negligence defense," which "involves an <u>objective</u> standard," <u>id.</u> at 27. According to the Court in <u>H.R.H. Metals</u>, "'it has long been recognized that contributory negligence may also be predicated upon the failure to appreciate the danger when there is a reasonable opportunity to do so under the circumstances.'" <u>Id.</u> (quoting <u>Alabama Power Co. v. Mosley</u>, 294 Ala. 394, 398, 318 So. 2d 260, 263 (1975)) (emphasis omitted). <u>See</u> <u>also</u> <u>Hannah v. Gregg, Bland & Berry, Inc.</u>, 840 So. 2d 839, 860-61 (Ala. 2002) (noting that, for a court to enter a <u>judgment as a matter of law</u> in favor of a defendant based on contributory negligence, it must be shown that the plaintiff "put himself in danger's way and that the plaintiff had a conscious appreciation of the

16

danger at the moment the incident occurred," that "[t]he proof required for establishing contributory negligence as a matter of law should be distinguished from an instruction given to a jury when determining whether a plaintiff has been guilty of contributory negligence," and that "[a] jury determining whether a plaintiff has been guilty of contributory negligence must decide only whether the plaintiff failed to exercise reasonable care").

In its judgment awarding Ratliff a new trial, the trial court cited Lyons v. Walker Regional Medical Center, Inc., 868 So. 2d 1071 (Ala. 2003), a medical-malpractice case in which the Court concluded that the defendants had presented sufficient evidence in support of their contributory-negligence and assumption-of-the-risk defenses. The trial court in the present case concluded that, under Lyons, in medical-malpractice cases, contributory negligence and assumption of the risk should be "combined" and require "both a proof of knowledge and appreciation of the danger." To be fair, Lyons did involve a "combined" jury charge on contributory negligence and assumption of the risk. But Lyons did not hold that a defendant in such a case necessarily must prove that a plaintiff did indeed have subjective knowledge of the particular

17

danger at issue in order to rely on a contributory-negligence defense. Rather, the Court, after noting that there had been no objection to the "combined" charge, concluded that there was sufficient evidence justifying the jury's conclusion with respect to that charge.

It is not entirely clear, but it does not appear that Ratliff necessarily disagrees with Dr. Koe and Wills Valley that they could support a contributory-negligence defense with evidence indicating that McBride should have been aware of danger, as she asserts in her brief to this Court that the defendants "failed to present substantial evidence of any kind showing that Rhonda McBride knew or should have known of some danger [in missing two appointments at Wills Valley's medical clinic]." Ratliff's brief at 41 (emphasis added). But Ratliff asserts that "[t]here must be some knowledge and appreciation of some type of recognizable danger to require a layperson patient to have to exercise reasonable care to protect herself from harm." Id. (emphasis added).

Based on the precedent that Dr. Koe and Wills Valley cite, it is certainly arguable that, in order to reach the jury with their contributory-negligence defense, the defendants did not necessarily have to offer evidence indicating that McBride subjectively appreciated danger. But,

18

regardless, in our view, the evidence indicating that McBride should have known of the danger of not following up with appointments at Wills Valley's medical clinic, and of the even more specific danger of possibly having overly thin blood and failing to obtain further blood tests, is also sufficient to create a jury question as to whether she did indeed know of those dangers. Dr. Koe told nurse practitioner Ware that, while on Coumadin, McBride would need to have her blood tested promptly, and possibly weekly, for thinness. Medical assistant Gilreath, who called McBride's telephone, testified that her established protocol was to inform patients of the nature of Coumadin and to instruct them to follow up in a week and that they would likely need to take part in weekly tests of blood thickness. Pharmacist Ashley testified that she informs patients that Coumadin causes a high risk of bleeding and that she makes them aware of the necessity of following up with their doctors. The medication guide required by law to accompany a Coumadin prescription warns of "very bad and sometimes deadly bleeding" and directs users of the medication to have their blood checked for bleeding risk. The Coumadin prescription bottle specifically instructs users of the medication to review the medication guide. Gilreath testified that, when McBride had her

blood tested in early December 2016, established protocol would have been to inform McBride that testing of blood thickness was necessary and to direct her to return in a week. The testimony of Dr. Koe, who was confident that McBride had been informed of the testing requirements, confirmed this protocol. Gilreath testified that it was not possible that McBride had not been made aware of the need and the reason for the blood tests. Testimony, as well as McBride's telephone and medical records, show various communications regarding appointments, missed appointments, rescheduled appointments, and confirmations of appointments dealing with following up on test results, blood-thinner medication, and requests for "more education." After McBride's initial blood tests during her December 6, 2016, appointment at Wills Valley's medical clinic, there were 9 calls between Wills Valley and McBride's telephone, totaling 20 minutes.

"Generally, the issue of whether a person is contributorily negligent is a question of fact for the jury." Adams v. Coffee Cnty., 596 So. 2d 892, 895 (Ala. 1992). The evidence in this case must be "viewed in a light most favorable to [the defendants] and all reasonable inferences the jury was free to draw are indulged." Lemley, 178 So. 3d at 845. The defendants

presented significant evidence, from witness testimony to warning labels, indicating that Coumadin is dangerous and that physician consultation is part of the prescription and therapy. Ratliff points to many instances of her counsel's thorough examination of defense witnesses that was clearly aimed at attacking the weight of their testimony. But it is the role of the jury to judge the credibility of the witnesses. Flint Constr. Co. v. Hall, 904 So. 2d 236, 250 (Ala. 2004). The question is not whether the jury had to conclude that McBride was contributorily negligent, but whether "it is perceivable that the jury verdict is supported by the evidence." Mitchell, 641 So. 2d at 239. Based on the evidence, it is indeed "perceivable" that the jury could have concluded that McBride was contributorily negligent.

There was enough evidence to instruct the jury on contributory negligence, and the verdict of the jury was not against the great weight and preponderance of the evidence. On that basis, the jury's verdict should have been upheld, and the judgment ordering a new trial must be reversed.

REVERSED AND REMANDED.

Wise, Bryan, and Mendheim, JJ., concur.

21

Cook, J., concurs specially, with opinion.

Mitchell, J., concurs in the result, with opinion.

Parker, C.J., dissents.

Stewart, J., dissents, with opinion.

COOK, Justice (concurring specially).

I concur fully with the main opinion's conclusion that the jury's verdict in this case should have been upheld because there was sufficient evidence to instruct the jury on contributory negligence. I write separately, however, to clarify for the bench and the bar the standard of review that applies in cases such as this one.

The plaintiff, Donna Ratliff, as the personal representative of the estate of Rhoda Gail McBride, deceased, asserted, among other claims, a medical-malpractice claim under the Alabama Medical Liability Act ("the AMLA"), Ala. Code 1975, § 6-5-480 et seq. and § 6-5-540 et seq., against Frances Koe, M.D., and Wills Valley Family Medicine, LLC.

As the main opinion explains, Ratliff moved for a judgment as a matter of law on the basis that the defendants had failed to provide sufficient evidence demonstrating that McBride's own negligence had contributed to her injuries and eventual death. The DeKalb Circuit Court denied Ratliff's motion and charged the jury on that defense.

After the jury returned a verdict in favor of the defendants, Ratliff moved for a new trial. In her motion, Ratliff's sole argument was that the defendants had not presented sufficient evidence supporting their

contributory-negligence defense and that the trial court had, therefore, erred in submitting that defense to the jury.[3] The trial court agreed with Ratliff, finding that the defendants had "failed to present substantial evidence that Ms. McBride's actions deviated from what a reasonably prudent person would have done in the same or similar circumstances, proximately contributing to her injuries and death." (Emphasis added.) It thus concluded that it should not have given the jury an instruction on that defense.

Our Court has previously recognized that the standard of proof under the AMLA requires a plaintiff to prove his or her case by "'"substantial evidence."'" Cackowski v. Wal-Mart Stores, Inc., 767 So. 2d 319, 329 (Ala. 2000) (quoting Johnson v. Wagner, 678 So. 2d 782, 783 (Ala. 1996) (Houston, J., concurring specially), quoting in turn § 6-5-549, Ala. Code 1975)). Likewise, as the main opinion correctly notes, "[t]his

---

[3]Likewise, the only argument made by Ratliff on appeal is that there was not substantial evidence in support of a finding of contributory negligence. And, in her brief, Ratliff appears to agree that this was the reason for the trial court's ruling: "The trial court should have entered judgment as a matter of law in favor of [Ratliff] on the contributory negligence defense, and it properly recognized that substantial evidence did not support that defense at trial, which is why it granted a new trial in its discretion." Ratliff's brief at 56-57 (emphasis added).

Court has indicated that a contributory-negligence defense in a medical-malpractice action must [also] be proven to a jury by substantial evidence." ____ So. 3d at ____ (citing <u>Cackowski</u>, 767 So. 2d at 330 (concluding that the defendant "was also required to prove its affirmative defense of contributory negligence by substantial evidence")). The question of whether substantial evidence was presented in support of a medical-malpractice claim or defense is a question of law. <u>See, generally</u>, <u>Cackowski</u>, 767 So. 2d at 329-30. As noted by the main opinion, our Court reviews questions of law de novo. <u>See</u> <u>Bethel v. Franklin</u>, 381 So. 3d 1121, 1126 (Ala. 2023). <u>See</u> <u>also</u> Rule 56, Ala. R. Civ. P., and Rule 50, Ala. R. Civ. P.

However, Ratliff contends that our Court should apply a discretionary standard in reviewing the trial court's decision to order a new trial in this case. In support of that contention, Ratliff quotes <u>Hill v. Cherry</u>, 379 So. 2d 590, 592 (Ala. 1980), for the following proposition:

> "Granting or refusing a motion for new trial rests within the sound discretion of the trial court; the exercise of that discretion carries with it a presumption of correctness which will not be disturbed by this court unless some legal right was abused and the record plainly and palpably shows the trial court was in error."

25

See Ratliff's brief at 29. According to Ratliff, the trial court "properly recognized that substantial evidence did not support [the contributory-negligence] defense at trial," Ratliff's brief at 56-57, and, thus, "did not exceed its discretion when it granted [her] motion for new trial and set aside the tainted jury verdict," id. at 36.

Contrary to Ratliff's position, the caselaw provided in the main opinion and noted above makes clear that the question of whether substantial evidence was presented in support of a medical-malpractice claim or defense is a question of law that has been resolved by the trial court. The resolution of a question of law cannot be reviewed under a discretionary standard. The de novo standard of review is the standard our Court must apply for questions of law.

That standard applies whether the movant is the plaintiff or the defendant and whether the argument concerns a claim or a defense -- as long as the basis for the argument is whether substantial evidence existed in support of the medical-malpractice claim or defense.

Applying, as we must, the de novo standard of review to the question of law presented here, the main opinion correctly concludes that there was substantial evidence presented in support of the contributory-

26

negligence defense and, consequently, in support of the jury's verdict. I therefore agree that we must reverse the trial court's judgment ordering a new trial.

MITCHELL, Justice (concurring in the result).

I concur in reversing the trial court's judgment ordering a new trial. But, in my view, the majority opinion's sufficiency-of-the-evidence holding <u>alone</u> enables us to decide this appeal, and we should not go into contributory negligence, assumption of the risk, or the burden of persuasion for those defenses.

Whether substantial evidence was presented in support of a medical-malpractice claim or defense is a question of law. <u>Cackowski v. Wal-Mart Stores, Inc.</u>, 767 So. 2d 319, 329-330 (Ala. 2000). And we review questions of law de novo. <u>See</u> <u>Bethel v. Franklin</u>, 381 So. 3d 1121, 1126 (Ala. 2023). In doing so, we afford great deference to a jury's determination and will reverse a trial court's judgment ordering a new trial "when on review it is perceivable that the jury verdict is supported by the evidence." <u>Mitchell v. Johnson</u>, 641 So. 2d 238, 239 (Ala. 1994) (citing <u>Jawad v. Granade</u>, 497 So.2d 471 (Ala.1986)); <u>see also</u> <u>Beauchamp v. Coastal Boat Storage, LLC</u>, 4 So. 3d 443, 450 (Ala. 2008).

I agree with the majority opinion that when we view the evidence here in a light most favorable to the jury verdict, "it is perceivable that [it] is supported." <u>Mitchell</u>, 641 So. 2d at 238; <u>see also</u> __ So. 3d at __. At

28

trial, Frances Koe, M.D., and Wills Valley Family Medicine LLC, the defendants, offered the following evidence: (1) the telephone calls between Rhoda McBride and Wills Valley after her first blood-test results, thus permitting the jury to find that McBride knew to return for more blood tests; (2) scheduled appointments for which McBride failed to appear after she had been prescribed Coumadin; and (3) the pharmacist's testimony of her standard practice to warn patients of Coumadin's side effects. This constituted sufficient evidence by which the jury could find that McBride was contributorily negligent in causing her suffering from Coumadin toxicity.

But I part ways with the majority opinion because it goes further by discussing this Court's holding in <u>Lyons v. Walker Regional Medical Center, Inc.</u>, 868 So. 2d 1071 (Ala. 2003); the possible intersection of assumption of the risk and contributory negligence; and whether a successful contributory-negligence defense requires showing that a plaintiff had subjective knowledge of a dangerous condition. <u>See</u> __ So. 3d at __. None of that discussion is necessary because, as the opinion itself notes, "the evidence indicating that McBride <u>should</u> have known of the danger of not following up with appointments ... [was] ... sufficient to

29

create a jury question as to whether she did indeed know of the danger." __ So. 3d at __. I'm concerned that the extraneous discussion of contributory negligence and assumption of the risk has the potential to lead future litigants astray analytically, to cause confusion for the trial courts, and to splinter our caselaw. Consequently, I am able to concur in the result only.

STEWART, Justice (dissenting).

"[T]his Court has recognized the presumption that a trial judge, who has the advantage of observing all the parties involved in the trial, including the jury and its reactions, is in a better position [than an appellate court] to decide whether a verdict is flawed." Campbell v. Kennedy, 275 So. 3d 507, 516 (Ala. 2018)(citing Daniels v. East Alabama Paving, Inc., 740 So. 2d 1033, 1049 (Ala. 1999)).

In vacating the jury's verdict and granting a new trial, the trial court did not consider whether the evidence was sufficient to support the jury's verdict.[4] Instead, the trial court expressly determined that the jury should not have had the opportunity to consider the contributory-negligence defense because the defendants had not presented substantial evidence in support of that defense. Because the trial court granted a new trial "on grounds other than a finding that the verdict is against the great weight or preponderance of the evidence, this Court's review is limited,"

---

[4]The main opinion construes the trial court's judgment granting a new trial as determining that the evidence was insufficient to support the jury's verdict, and, thus, it views the evidence in the light most favorable to the defendants, finding that the jury's verdict "was not against the great weight and preponderance of the evidence." ___ So. 3d at ___.

31

and the judgment should be reversed only if a "'"legal right [was] abused and the record plainly and palpably shows the trial judge to be in error."'" Baptist Med. Ctr. Montclair v. Whitfield, 950 So. 2d 1121, 1125-26 (Ala. 2006).

To submit a contributory-negligence defense to a jury in a medical-malpractice case, a defendant must present substantial evidence showing that the plaintiff had, or should have had, both (1) knowledge of the dangerous condition and (2) an appreciation of the danger under the surrounding circumstances and that (3) in light of that knowledge and appreciation, the plaintiff failed to exercise reasonable care, by placing himself or herself in the way of danger. See Imperial Aluminum-Scottsboro, LLC v. Taylor, 295 So. 3d 51, 62 (Ala. 2019)(plurality opinion); Lyons v. Walker Reg'l Med. Ctr., 791 So. 2d 937, 944 (Ala. 2000); and Cackowski v. Wal-Mart Stores, Inc., 767 So. 2d 319, 327 (Ala. 2000).

I do not agree that there was substantial evidence indicating that Rhoda McBride knew or should have known of the risks associated with Coumadin and the necessity for repeated testing to warrant submission

of that issue to the jury.[5]  Although there was some evidence suggesting that <u>Donna Ratliff</u> had been presented with information that could have put her on notice of the dangers associated with Coumadin and of the importance of following up for blood testing, the defendants did not present substantial evidence indicating that <u>McBride</u> -- the patient here alleged to have been contributorily negligent -- was aware of the information given to Ratliff.  Nor can I conclude, based on the specific circumstances presented in this case, that the jury could have imputed Ratliff's knowledge of the dangers of Coumadin to McBride.[6]  Thus, the trial court's decision to grant a new trial was not plainly or palpably

---

[5]There was no direct evidence that McBride had an appreciation of the dangers of Coumadin and of the failure to obtain regular blood testing.  The evidence indicated that McBride had not received the medication guide provided with the Coumadin bottle, and, although there was some evidence indicating that a medical assistant may have informed McBride that she needed to return for further blood testing, there was not substantial evidence indicating that McBride had been directly informed of the specific importance of returning for such testing.  Indeed, neither Dr. Koe, the medical assistant, nor the pharmacist could recall any interaction with McBride.

[6]The question of agency was not raised at trial or presented to the jury, and the agency of a family member is not presumed.  <u>See</u>, <u>e.g.</u>, <u>J.C. Jacobs Banking Co. v. Campbell</u>, 406 So. 2d 834 (Ala. 1981).

wrong, <u>see</u> <u>Whitfield</u>, <u>supra</u>, and it should be affirmed. Therefore, I respectfully dissent.